EDITH SAFFORD *v.* OWENS BROCKWAY ET AL.
(SC 16772)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 14—officially released March 11, 2003

*Joseph J. Passaretti, Jr.*, with whom was *Marie E. Gallo-Hall*, for the appellants (defendants).

*Steven H. Cousins*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The sole issue in this appeal[1] is whether, under General Statutes § 31-308 (b),[2] the workers' com-

---

[1] The defendant appealed from the decision of the workers' compensation review board to the Appellate Court pursuant to General Statutes § 31-301b. We then transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 31-308 (b) provides in relevant part: "With respect to the following injuries, the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be seventy-five per cent of the average weekly earnings of the injured employee, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310, but in no case more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, or less than fifty dollars weekly. All of the following injuries include the loss of the member or organ and the complete and permanent loss of use of the member or organ referred to:

| MEMBER | INJURY | WEEKS OF COMPENSATION |
|---|---|---|
| Arm | | |
| Master arm | Loss at or above elbow | 208 |
| Other arm | Loss at or above elbow | 194 . . . ." |

Although § 31-308 (b) was amended after the date on which the plaintiff sought workers' compensation benefits by the addition of certain other

pensation review board (board) properly affirmed an award of benefits by the workers' compensation commissioner for the fourth district (commissioner) that was based solely on medical evidence assessing a permanent impairment rating to a nonscheduled body part. The named defendant,[3] Owens Brockway, appeals from the board's decision affirming an award of workers' compensation benefits to the plaintiff, Edith Safford. We conclude that the commissioner abused his discretion by awarding benefits on a basis unsupported by medical evidence and, accordingly, we reverse the decision of the board.

The record reveals the following undisputed facts. On September 18, 1997, the plaintiff suffered bilateral rotator cuff tears to her shoulders during the course of her employment with the defendant, which, along with its insurer, AIG Insurance Company, and their third party administrator, GAB Robins Business Services, accepted liability for those injuries through a voluntary agreement. To repair her shoulders, the plaintiff had operations performed by David B. Brown, an orthopedic surgeon, who thereafter issued an opinion that the plaintiff had reached maximum medical improvement and that she had sustained a 20 percent permanent partial disability to each shoulder. Because the shoulder is not a listed body part in the schedule of compensable injuries attached to § 31-308 (b), but the arm or the

scheduled body parts and minor technical changes; see Public Acts 2000, No. 00-8; those changes are not relevant to this appeal. References herein to § 31-308 (b) are to the current revision.

[3] During the course of the proceedings underlying this appeal, the plaintiff's employer changed its name from Owens Brockway, which had been insured at the time of the plaintiff's injury by AIG Insurance Company, with GAB Robins Business Services as their third party administrator, to Owens-Brockway, which is insured by Hartford Insurance Group. Accordingly, AIG Insurance Company, GAB Robins Business Services and Hartford Insurance Group are named as defendants at various points in the proceedings. For purposes of clarity, we refer herein to Owens Brockway as the defendant.

upper extremity is such a listed part, counsel for the defendant wrote to Brown on November 30, 1999, inquiring whether, based on American Medical Association guidelines, the 20 percent rating to the shoulder "should be adjusted to equal a 12 [percent] permanency to the upper extremity or if [Brown stood] by [his] prior rating and instead [felt] that the [plaintiff] suffered a 20 [percent] permanent partial disability to the 'upper extremity.' " Brown sent a letter in response stating that, "a 20 [percent] permanency of the shoulder equates to a 12 [percent] permanent partial impairment of the entire upper extremity." The defendant's independent medical examiner, MacEllis K. Glass, an orthopedic surgeon and consultant, diagnosed the plaintiff as having a 15 percent permanent partial impairment rating of each upper extremity. Glass also reviewed Brown's initial report and concluded that, applying the American Medical Association guidelines to translate the rating in Brown's report to a scheduled body part, the plaintiff's injury would convert to a 14 percent impairment of the upper extremities.

At a formal hearing on August 17, 2000, the parties presented evidence to the commissioner, who was charged with determining the correct basis upon which to compensate the plaintiff for her permanent partial disability. The plaintiff sought payment of benefits on the basis of Brown's 20 percent impairment rating to each shoulder. The defendant contended that, pursuant to the schedule in § 31-308 (b), the plaintiff was entitled to benefits for a 12 percent permanent impairment to each upper extremity, on the basis of Brown's second impairment rating applying the American Medical Association guidelines.

On December 21, 2000, the commissioner issued a finding and award in which he determined that, because "§ 31-308 (b) indicates that permanent partial impairment for the arm is defined as from the elbow and

above," the 20 percent permanent partial impairment to the plaintiff's shoulders, as rated by Brown in his initial report, equated to a 20 percent loss of use of her arms in accordance with § 31-308 (b). Accordingly, the commissioner ordered that the defendant pay the plaintiff specific benefits in the amount of 41.6 weeks for the right shoulder and 38.8 weeks for the left shoulder, equal to 20 percent of the benefits period set forth in the schedule for the complete and total loss of use of scheduled body parts. See footnote 2 of this opinion.

Following the commissioner's denial of the defendant's motion to correct the findings upon which the award was based,[4] the defendant, pursuant to General Statutes § 31-301 (a), filed an appeal from the commissioner's decision with the board, which by a majority affirmed the commissioner's decision. Specifically, the board rejected the defendant's contention that the commissioner's award of specific benefits to the plaintiff had been for the shoulder—a body part not scheduled under § 31-308 (b). According to the board, when there is a "loss of or loss of use of an unscheduled body part (such as the shoulder), that injury may be compensated under § 31-308 (b) to the extent that it relates to the loss of or loss of use of a scheduled body part (such as the arm). . . . Though the shoulder is not itself a scheduled body part, [the plaintiff] is entitled to permanent partial disability benefits insofar as her shoulder impairments affect her ability to use her arms." (Citation omitted.) Concluding that the commissioner was empowered to rely on competent medical evidence, unrestricted to any one particular methodology in making his permanency assessments, the board determined

[4] Of particular relevance to this appeal was the defendant's claim in its motion to correct that the commissioner improperly had concluded that "[t]he permanent partial impairment to the [plaintiff's] shoulders are to be considered as a loss of the arm in accordance with [§] 31-308 (b)," and, that that finding therefore should be omitted entirely.

that the commissioner reasonably had relied on Brown's first report assessing a 20 percent permanent partial impairment of each shoulder, rather than on Brown's second report applying the American Medical Association guidelines that equated a 20 percent permanent impairment of the shoulder to a 12 percent permanent partial impairment of the entire upper extremity. The board also noted that Glass' report had set forth a range of possible ratings for the plaintiff's injury, from 10 to 20 percent impairment of the upper extremity, based on the success of the surgery to repair the injury. The board determined that the commissioner reasonably could have concluded that, despite the assessments by Brown and Glass, the surgery was not completely successful. Accordingly, the board affirmed the commissioner's decision. One of the three commissioners on the board, however, dissented. He agreed that the trial commissioner was not restricted to adopting any particular methodology, but he concluded that Brown's second report was a *clarification* of his initial report and that the two reports had to be read together in order to arrive at a permanency rating of a scheduled body part. Thereafter, the board, in a written ruling, denied the defendant's motion for reconsideration and reargument.[5] This appeal followed.

On appeal, the defendant contends that the board improperly affirmed the commissioner's award based on a 20 percent permanent partial impairment to each of the plaintiff's upper extremities. Specifically, the defendant cites to the 1993 amendment to the workers' compensation scheme that eliminated the commissioner's discretion to award benefits for injuries to non-

[5] As part of the basis for its denial of the defendant's motion for reconsideration, the board relied on its decision affirming the commissioner's findings, which the board claimed "explains that there is sufficient basis in the evidence to support a finding that the claimant sustained a 20 [percent] permanent partial impairment of each upper extremity by virtue of her sustaining a 20 [percent] permanency in each of her shoulders."

scheduled body parts and increased the list of scheduled body parts for which compensation could be awarded; see Public Acts 1993, No. 93-228, § 19; and contends that benefits for the plaintiff's permanent loss of partial use of her shoulders could have been awarded in accordance with § 31-308 (b) only with respect to a scheduled body part or organ, in this instance, her arm. In other words, the defendant claims that the shoulder impairment at issue had to be translated to an impairment of a scheduled body part in order for the plaintiff to receive benefits pursuant to § 31-308. The defendant contends that, in the present case, the medical evidence translating the impairment to the plaintiff's shoulder into a rating for her arm was provided by Brown's second report. That report, in the defendant's view, properly reflected the fact that, because the shoulder is merely a *portion* of the arm, or the upper extremity, his rating as to the plaintiff's shoulder impairment in his initial report could not equate to a rating of the impairment to her arm. Additionally, the defendant notes that the commissioner had Glass' report that offered additional opinions as to the permanent impairment of the plaintiff's upper extremity. Consequently, according to the defendant, the commissioner abused his discretion by disregarding all of the medical evidence, regardless of its source, and, instead, by substituting his own opinion to find that the 20 percent loss of function to each of the plaintiff's shoulders necessarily meant that she had a 20 percent loss of function of each arm.

In response, the plaintiff acknowledges that specific benefits can be paid only for scheduled body parts pursuant to § 31-308 (b). See *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 811, 730 A.2d 1149 (1999) ("legislature removed discretion from the statutory scheme for permanent partial disability compensation, and now authorizes compensation only for

scheduled injuries"); id., 809 ("injured employee [can] receive compensation for injury to an unscheduled body part or organ . . . to the extent that the injury relate[s] to the loss of or loss of use of a scheduled body part or member"). Additionally, the plaintiff recognizes that the shoulder is not such an identified body part and that the commissioner therefore had no discretion to award her compensation for the impairment to her shoulder. She contends, however, that compensation properly was awarded for impairment to her arm in accordance with § 31-308 (b) based upon sound medical evidence that the commissioner was free to credit, specifically, Brown's *first* report in which he assigned her a 20 percent permanency rating of both her shoulders. According to the plaintiff, although Brown's second report was predicated on application of the American Medical Association guidelines, which are a well established source of authority, the commissioner was free to disregard that report. The plaintiff contends, therefore, that the commissioner properly relied on an alternate method of rating permanency—Brown's first report.

Although we agree with the plaintiff that the commissioner was not required to adopt any one particular methodology in assigning a permanency rating, we also agree with the defendant that the commissioner was required to have relied upon competent medical evidence in determining the rating of a scheduled body part under § 31-308 (b). Therefore, this case is not about which method the commissioner was required to use in order to calculate the relevant translation, but, rather, whether there had been any medical evidence upon which he reasonably could have based his 20 percent permanency rating. Indeed, this case is, essentially, about whether the board properly affirmed the commissioner's interpretation of Brown's second report as merely an alternate method of calculating the plaintiff's permanency rating or whether that report was, instead,

a *clarification* of his first report, necessary to tie the injury to a scheduled body part. If, in fact, Brown's second report had been such a clarification, in the absence of any evidence supporting a 20 percent permanency rating of the plaintiff's arm or upper extremity, the commissioner's decision would have been based upon the improper substitution of his own opinion for that of the medical experts in assessing the plaintiff's permanency rating.

We first set forth the well established principles guiding our review of this issue. "It is well settled in workers' compensation appeals that the court does not retry the facts. . . . It is the function of the commissioner to determine the credibility of witnesses and to find facts, and the finding will not be corrected unless it contains facts found without evidence or omits material facts that are admitted or undisputed. . . . *True* v. *Longchamps, Inc.*, 171 Conn. 476, 478, 370 A.2d 1018 (1976); accord *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 799, 669 A.2d 1214 (1996). Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. *United Parcel Service, Inc.* v. *Administrator, Unemployment Compensation Act*, 209 Conn. 381, 385–86, 551 A.2d 724 (1988). When conclusions drawn by the commissioner result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them, the authority to reject such conclusions is well established. . . . *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 792, 694 A.2d 1230 (1997)." (Internal quotation marks omitted.) *Burse* v. *American International Airways, Inc.*, 262 Conn. 31, 37, 808 A.2d 672 (2002).

Our review of the record in this case reveals medical evidence by Glass and Brown, neither of whom gave

the plaintiff a permanency rating of 20 percent of the *arm* or *upper extremity*. As found by the commissioner, Glass, on the basis of his own methodology, gave the plaintiff a 15 percent permanent partial impairment rating of each upper extremity. Using the combined values of the American Medical Association guidelines as applied to Brown's initial rating, Glass gave the plaintiff a 14 percent impairment of the upper extremities. In his first report, Brown gave the plaintiff a 20 percent permanent impairment rating of each shoulder. When later asked by the defendant whether he would translate that rating into a 12 percent impairment of the upper extremity, by applying the American Medical Association guidelines, or whether he would translate it to a 20 percent impairment of the upper extremities, by using a different methodology, Brown responded that, "a 20 [percent] permanency of the shoulder *equates* to a 12 [percent] permanent partial impairment of the entire upper extremity." (Emphasis added.) In light of the question to which Brown was responding, Brown's second report, simply cannot be characterized as an alternate rating of the upper extremities using different methodology, but, rather, as a clarification of his first report necessary to bring the impairment within the schedule of body parts identified in § 31-308 (b).[6] The commissioner's finding that Brown's 20 percent impairment rating of the plaintiff's shoulders equated to a 20

[6] Indeed, a comparison between Glass' assessments and Brown's assessments readily demonstrates this distinction. Glass used two different *methodologies* to derive a rating for the impairment to the plaintiff's *upper extremities*—one using his own formula, which resulted in a 15 percent impairment rating, and one applying the American Medical Association guidelines to translate Brown's initial assessment of a 20 percent impairment to the plaintiff's shoulders, which resulted in a 14 percent impairment rating to the plaintiff's upper extremities. By contrast, Brown applied two different methodologies, but to achieve two different ends—one to assess the impairment to a nonscheduled body part, the shoulders, and one to assess the impairment to a scheduled body part, the upper extremities.

percent impairment to her arms was, therefore, without medical foundation.

It is properly within the commissioner's discretion to accept or reject all, or part of, a medical opinion. *Misenti* v. *International Silver Co.*, 215 Conn. 206, 209–10, 575 A.2d 690 (1990); *Pantanella* v. *Enfield Ford, Inc.*, 65 Conn. App. 46, 57, 782 A.2d 141, cert. denied, 258 Conn. 930, 783 A.2d 1029 (2001); *Keenan* v. *Union Camp Corp.*, 49 Conn. App. 280, 286, 714 A.2d 60 (1998). The commissioner had three ratings of impairment to a scheduled body part from which to choose: Brown's 12 percent rating, Glass' 15 percent rating or Glass' 14 percent rating applying the American Medical Association guidelines to Brown's initial assessment. Accordingly, the commissioner permissibly could have accepted or rejected any one of these impairment ratings of the plaintiff's upper extremities. The commissioner was not free, however, to substitute his own opinion that Brown's initial report rating the plaintiff as having a 20 percent impairment of the shoulders, an unscheduled body part, is, a priori, equivalent to a 20 percent impairment of the upper extremities, a scheduled body part. In the absence of evidence to support that finding, the commissioner abused his discretion. See *Burse* v. *American International Airways, Inc.*, supra, 262 Conn. 37. Accordingly, we conclude that the board improperly determined that there was sufficient evidence in the record to support the commissioner's conclusion.[7]

---

[7] Similarly, Glass' range of impairment ratings from 10 to 20 percent, depending on the success of the plaintiff's type of surgery, could not provide a proper basis for the award. Glass assessed the plaintiff's surgery results as "good," equating that result to a 15 percent impairment. Although there was evidence that the plaintiff's pain thereafter increased, in the absence of competent medical evidence indicating that the pain reflected an increased impairment, the commissioner properly did not rely on the evidence of increased pain to support his permanency assessment.

The decision of the board is reversed and the case is remanded to the board with direction to reverse the commissioner's decision and to remand the case to the commissioner to determine the plaintiff's permanency rating in accordance with this opinion.

In this opinion the other justices concurred.