FRANK A. ARCANO, JR. *v.* BOARD OF EDUCATION
OF THE CITY OF STAMFORD ET AL.
(AC 23605)

Foti, Flynn and DiPentima, Js.

Argued January 8—officially released March 2, 2004

*Kevin J. Maher*, with whom, on the brief, was *James D. Moran, Jr.*, for the appellants (defendants).

*William B. Bilcheck, Jr.*, for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendants, the board of education of the city of Stamford and Kemper Insurance Group, appeal from the decision of the workers' compensation review board (board) affirming the findings and award of the workers' compensation commissioner (commissioner) in favor of the plaintiff, Frank A. Arcano, Jr.[1] The defendants argue on appeal that the board improperly affirmed the commissioner's finding that the plaintiff was totally disabled from March 6, 1998, until the close of the evidentiary record. The defendants also argue that the method of calculation of attorney's fees awarded was not articulated by the commissioner and that the defendants were not given an opportunity to cross-examine the plaintiff's counsel regarding the amount of his fee petition. Because there is substantial evidence in the record to support the board's decision, and because we find that the claim regarding attorney's

---

[1] Frank A. Arcano, Jr., died in December, 2001. The commissioner's subsequent order in February, 2002, directed the defendants to remit payment for benefits to the plaintiff's estate.

fees is without merit, we affirm the decision of the board.

The basic facts of this case as found by the commissioners[2] are not in dispute. The plaintiff was employed by the defendant board of education as a custodian. On January 13, 1997, the plaintiff suffered a cerebral vascular accident (stroke) while working in his capacity as an employee of the board of education at Rogers Magnet School. The plaintiff had been lifting credenzas weighing between 250 and 400 pounds with the assistance of his coworkers. Just after lifting one credenza by himself, he began to feel ill. He was subsequently taken to see Leonard Vinnick, his physician. Vinnick examined the plaintiff and found that he had speech difficulty and referred him to Evangelos Xistris, a neurologist, who concluded that the plaintiff had suffered a stroke. The plaintiff began to suffer paralysis to his left side, particularly to his head, arm and leg. As a result of the paralysis, the plaintiff began to drag his left foot and developed an infectious ulcer on the bottom of his foot.

Commissioner Robin L. Wilson concluded in her June 7, 2000 finding and award that the plaintiff's stroke had been caused by lifting the credenzas and therefore was work related and compensable. Commissioner Wilson also determined that the plaintiff's foot ulcer was caused by his paralysis, which resulted from the stroke, and was therefore also compensable. Commissioner Wilson ordered the defendants to issue voluntary agreements accepting liability for the plaintiff's injuries, to reimburse the plaintiff for any sick or vacation time used while he was out on total disability, to pay the plaintiff temporary total and temporary partial disability

---

[2] The issues of compensability and the amount of compensation benefits owed to the plaintiff were bifurcated, and findings were made by both Commissioner Robin L. Wilson and Commissioner James J. Metro.

benefits as determined, to reimburse the plaintiff for any out-of-pocket medical expenditures, to pay all reasonable and necessary medical bills related to the claim and to reimburse the plaintiff for the cost of deposing a particular physician. The commissioner's finding and award was not appealed.

After a formal hearing was held to determine the type and amount of benefits due the plaintiff, Commissioner James J. Metro issued his finding and award on October 2, 2001. Commissioner Metro concluded that the plaintiff was totally disabled from January 14 to August 3, 1997, and from March 6, 1998, to July 12, 2001, and ordered the defendants to pay the plaintiff temporary total disability benefits owed to him for these time periods at the stipulated base compensation rate of $364.67 per week. Commissioner Metro determined that the plaintiff was entitled to statutory interest on unpaid temporary total disability benefits during these periods and was also due attorney's fees as a result of the undue delay caused by the defendants' lack of compliance with Commissioner Wilson's June 7, 2000 order. He awarded attorney's fees in the amount of $3850, i.e., 22 hours at the rate of $175 per hour. Commissioner Metro broke down the hours as follows: 9.5 hours at workers' compensation hearings; 4 hours of office conference time; and 8.5 hours of telephone conference time. The case was then appealed to the board.

The board was presented with the primary issue that is now facing this court: Whether the commissioner had sufficient evidence on which to find that the plaintiff was totally disabled after March 6, 1998. In affirming Commissioner Metro's finding and award, the board emphasized the deposition testimony of Vinnick, which it found sufficient to support the finding of total disability. On the matter of attorney's fees, the board concluded that the record amply supported Commissioner Metro's conclusion of undue delay by the defendants

and held that the defendants effectively had waived their right to cross-examine the plaintiff's counsel. This appeal ensued.

At the outset, we set forth the applicable standard of review. "When the decision of a commissioner is appealed to the board, the board is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . The commissioner has the power and duty, as the trier of fact, to determine the facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Our scope of review of the actions of the board is similarly limited." (Internal quotation marks omitted.) *Sprague* v. *Lindon Tree Service, Inc.*, 80 Conn. App. 670, 673, 836 A.2d 1268 (2003). Although the court may not supplant its conclusions for those of the board, the court "retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) *Safford* v. *Owens Brockway*, 262 Conn. 526, 534, 816 A.2d 556 (2003).

I

The defendants first claim that the board acted improperly as a matter of law by affirming Commissioner Metro's conclusion that the plaintiff was totally disabled as of March 6, 1998. The defendants rely entirely on Vinnick's deposition testimony in support of their claim. Specifically, the defendants argue that Vinnick testified that the plaintiff was disabled after March 8, 1998, only by virtue of medical conditions that pre-existed his work-related accident, namely, hypertension, congestive heart failure, diabetes and nephrotic syndrome. The defendants noted that Vinnick testified

that the plaintiff's foot ulcer did not exist prior to his work-related accident, but that it had "healed" as of March 3, 1999, and did not "break down" again until January, 2001. The defendants argue that because Vinnick testified that the other conditions were not a result of the compensable injury and that the foot ulcer had healed, the plaintiff was not disabled during the relevant time periods because of his work-related accident, but rather as a result of his other preexisting conditions.

We agree with the plaintiff that the defendants presented only the portion of Vinnick's testimony that was favorable to their position. The defendants' argument that the plaintiff did not suffer from any work-related disability as of March 6, 1998, presupposes that the foot ulcer suffered by the plaintiff did not result from his stroke.[3] However, accepting this argument ignores Vinnick's testimony that the plaintiff's stroke caused the foot ulcer in that the damage done to his central nervous system by the stroke triggered a change in his ambulatory pattern wherein more weight was placed on one of his feet. The physician further testified that even if the plaintiff had not suffered from a foot ulcer, he could not have gone back to work due to right hand tremors and changes in his mentation that were caused by the stroke.[4]

---

[3] The defendants emphasized Vinnick's testimony that the ulcer had not healed until March 3, 1999. Accepting this fact as true, their argument contesting the plaintiff's disability from March, 1998, until March, 1999, would be baseless unless it could be established that the foot ulcer did not result from the stroke.

[4] "[The Plaintiff's Counsel]: But the right hand tremors and the processing delay, would that have inhibited him from returning back to work?

"[The Witness]: Absolutely, in addition to all the other problems.

"[The Plaintiff's Counsel]: [S]tanding alone, if he had processing delays and tremors in his hand—

"[The Witness]: I don't see how he could go back to work with changes in his mentation.

"[The Plaintiff's Counsel]: And that condition has remained the same since March 3, 1999, until the present?

"[The Witness]: If anything, it has gotten worse. He's even more confused."

The defendants argue that Vinnick's testimony that they have cited in support of their argument was "unambiguous and uncontroverted" as well as "uncontradicted." However, Vinnick summed up the sequence of the plaintiff's maladies as follows: "I think he developed a stroke . . . . As a result of that stroke, he developed this disequilibrium. As a result . . . he developed a foot ulcer. This foot ulcer has been the harbinger of all sorts of bad things for him. It has prevented him from working because, as a result of his foot ulcer and after his surgery for his foot ulcer . . . he went into congestive heart failure, and from then on, it has been nothing but a spiral downhill for him." Although the defendants refer to the plaintiff's stroke as entirely separate from his other conditions, Vinnick testified that the plaintiff's congestive heart failure "was contributed to by the fact that he had an infection going on in his foot . . . as well as the fact that he had this foot ulcer that set all this up and that . . . he developed, whether it was in Boston or a nursing home, he probably had . . . a heart attack." The physician further testified that the stroke could have aggravated the plaintiff's diabetes, small vessel disease and hypertension.

In addition to Vinnick's testimony, a letter from the plaintiff's podiatrist, James Gunipero, was admitted into evidence. Gunipero wrote: "In my opinion, [the plaintiff] has been totally disabled since [March, 1998] due to the repeated ulcerations and breakdown of his left foot. . . . If [the plaintiff] had stayed in his job, he would have lost his foot, his leg and possibly more."

We conclude that sufficient evidence existed to support Commissioner Metro's determination that the plaintiff's stroke caused or exacerbated conditions that prevented the plaintiff from working during the relevant time periods. Therefore, the board properly affirmed the findings of the commissioner on this claim.

## II

The defendants' next claim is that the board improperly affirmed the commissioner's award of attorney's fees to the plaintiff.[5] It is well settled that a trial court has discretion to award a party attorney's fees. See *Gianquitti* v. *Sheppard*, 53 Conn. App. 72, 83, 728 A.2d 1133 (1999). This standard applies both to the amount of fees awarded and to the determination of the factual predicate justifying the award. *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252, 828 A.2d 64 (2003). Workers' compensation commissioners similarly have discretion to award attorney's fees, which is squarely bestowed on them by General Statutes §§ 31-300 and 31-327.

The defendants argue that the commissioner's award of attorney's fees was not detailed enough to ascertain the method of calculation used to determine the fee. The commissioner set out the award of attorney's fees as follows: "[T]he [plaintiff] is entitled to have his attorney's fees, i.e., twenty-two hours at the rate of $175 per hour for a total of $3850 paid to [the plaintiff's counsel]." The commissioner also detailed the number of hours the attorney claimed to have spent working on various tasks. There is no mystery as to how the commissioner arrived at the amount of attorney's fees. If the commissioner had set forth the attorney's rate and time spent,

---

[5] The defendants challenge the award of attorney's fees partly on the basis of their contention that they were not required to make temporary total disability payments to the plaintiff and that attorney's fees were therefore inappropriate because if no benefits were owed, then no undue delay was committed. We need not address this argument for two reasons. First, the defendants were ordered to do several things in Commissioner Wilson's finding and award on compensability, which they did not do. As they did not challenge that award, they cannot now contend that they were not obligated to perform these tasks. Second, because we have determined that the board properly affirmed the commissioner's finding that the plaintiff was totally disabled during the contested time periods, the defendants' argument is not valid.

but then awarded a significantly higher or lower amount, then the commissioner would have been required to explain his or her deviation.[6] See *Toth* v. *American Frozen Foods, Inc.*, 04069 CRB-04-99-06 (August 9, 2000) (remanded for articulation where commissioner subtracted $1700 from amount requested without explanation).[7] We also note that the defendants implied in their argument that this award may have risen above the 20 percent cap on attorney's fees set forth in the workers' compensation fee guidelines promulgated by the chairman of the workers' compensation commission.[8] This does not affect our decision in that (1) the attorney's fees awarded did not comprise more than 20 percent of the temporary total disability payments owed to the plaintiff and (2) this percentage may be exceeded where fees have been awarded because of undue delay, as in this case. See *Day* v. *Middletown*, 59 Conn. App. 816, 823 n.10, 757 A.2d 1267 (noting § 5 of fee guidelines permits commissioner to determine attorney's fees based on time spent in contested cases or formal hearings), cert. denied, 254 Conn. 945, 762

[6] The plaintiff's counsel actually requested $4068.75 in attorney's fees and claimed to have spent 23.25 hours on this case. However, when the number of hours that the plaintiff's counsel testified to have spent on this case were calculated, they in fact equated to twenty-two hours.

[7] "[I]t is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations. . . . When an agency has expertise in a given area and a history of determining factual and legal questions similar to those at issue, its interpretation is granted deference by the courts." (Citations omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 138–39, 778 A.2d 7 (2001).

[8] The chairman of the workers' compensation commission issues fee guidelines pursuant to General Statutes § 31-280 (b) (11) (C), which directs the chairman in relevant part to "[i]ssue . . . annually . . . guidelines for the maximum fees payable by a claimant for any legal services rendered by an attorney in connection with the provisions of this chapter, which fees shall be approved in accordance with the standards established by the chairman . . . ."

A.2d 900 (2000); see also *Heene* v. *Professional Ambulance Service, Inc.*, 03743 CRB-06-97-12 (January 8, 1999).

The defendants also claim that they were denied the opportunity to cross-examine the plaintiff's counsel regarding the amount of his requested fee. In support of their argument, the defendants cite the board's decision in *Cirrito* v. *Resource Group Ltd. of Connecticut*, 4248 CRB-1-00-6 (June 19, 2001). In *Cirrito*, the board remanded the matter on the issue of attorney's fees because the denial of the defendants' request to cross-examine the plaintiff's counsel regarding the amount of his requested fee constituted a denial of procedural due process. The board concluded that the defendants' counsel had *adequately preserved* an objection for review and that the commissioner's ruling "[cast] a shadow of doubt over whether the [defendants] were afforded a meaningful right to respond to this item of evidence, *given their articulated desire to cross-examine the preparer of the document.*" (Emphasis added.) Id.

*Cirrito* is plainly distinguishable from the present case. The record indicates that the defendants' counsel did not request an opportunity to cross-examine the plaintiff's counsel and also failed to object to the request for attorney's fees. The plaintiffs contend that this lack of objection constituted a waiver of the right to cross-examine the plaintiff's counsel. We agree.

It is axiomatic that a trial court must "[afford] the parties the opportunity to present evidence and to be heard on the issue of reasonable attorney's fees. . . . [A] party seeking attorney's fees must satisfy the undisputed requirement that the reasonableness of attorney's fees and costs . . . be proven by an appropriate evidentiary showing. . . . This protects the opposing party's right to litigate fully the reasonableness of the

attorney's fees." (Internal quotation marks omitted.) *Resurreccion* v. *Normandy Heights, LLC*, 76 Conn. App. 642, 651, 820 A.2d 1116, cert. denied, 264 Conn. 917, 826 A.2d 1159 (2003). Until recently, it was unclear whether a party's right to litigate the reasonableness of attorney's fees is waived if it was not asserted at trial. Our Supreme Court has afforded us guidance on this issue in its recent decision, *Smith* v. *Snyder*, 267 Conn. 456, 839 A.2d 589 (2004). In that case, the court clarified the evidentiary burden required in setting forth attorney's fees, holding that "the proponent must present to the court at the time of trial . . . a statement of the fees requested and a description of services rendered." Id., 479. The *Smith* court determined that the plaintiffs' bare request for attorney's fees was inadequate under this standard, but the court did not reverse the award due to the opposing counsel's failure to object or to respond in any way to the request. Id., 481. The court concluded that "the defendants, in failing to object to the plaintiffs' request for attorney's fees, effectively acquiesced in that request, and, consequently, they now will not be heard to complain about that request." Id.

In this case, we note that although the defendants are not expressly challenging the evidence produced by the plaintiff's counsel regarding his requested fees, the record reveals that the plaintiff's counsel provided to the commissioner a detailed description of the tasks he performed and the time spent on each task. The record does not indicate that defendants' counsel in any way objected to this award or requested an opportunity to question the plaintiff's counsel on this issue. In light of the holding in *Smith*, we find this fact to be dispositive and will not overturn the board's affirmation of the commissioner's award of attorney's fees.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.