******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# CHRISTINA MEDEIROS *v.* DAVID D. MEDEIROS
## (AC 38070)

Keller, Prescott and Harper, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court finding him in contempt for having violated a postjudgment order providing the plaintiff with access to the parties' minor child. The dissolution judgment incorporated the parties' parental responsibility plan, which provided that the parties were to share joint legal and physical custody of the child. Thereafter, the dissolution judgment was modified, awarding the defendant sole legal custody of the child and requiring that the plaintiff's visitation with the child be supervised, but a later modification order restored the parties' joint legal custody and afforded the plaintiff with unsupervised and overnight visits. During one of the child's visits with the plaintiff, there was an incident in which the plaintiff disciplined the child. When the child returned to the defendant's house, they discussed what had occurred during that visit. Subsequently, the plaintiff filed a motion for contempt alleging that the defendant had refused to allow her access to the child in violation of the court's order. At the hearing on the contempt motion, the court sustained, on the ground of hearsay, three separate objections by the plaintiff to the admission of testimony regarding statements that the child had made to the defendant regarding what had occurred during his visit with the plaintiff. Thereafter, the trial court granted the plaintiff's motion for contempt, finding that the plaintiff had acted appropriately in disciplining the child and that the defendant was in wilful contempt of its previous modification order because his denial of access to the plaintiff was without justification. The court then imposed sanctions, including fines, and that the defendant be incarcerated for ten days and that he pay the plaintiff attorney's fees and marshal fees, but it stayed the order of incarceration pending the defendant's compliance with the court-ordered visitation. The court later vacated the stayed incarceration order upon the defendant's compliance with it. On appeal, the defendant claimed, inter alia, that the trial court committed error in failing to allow him a fair opportunity to present a defense to the plaintiff's motion for contempt by preventing him from testifying as to statements made to him by the child concerning his visit with the plaintiff. *Held*:

1. Although the trial court improperly precluded the defendant, on the ground of hearsay, from testifying regarding statements made to him by the child concerning what had occurred during the subject visit with the plaintiff, the error was harmless, as it was unlikely to have affected the outcome of the trial; although the challenged testimony should have been admitted under the state of mind exception to the hearsay rule, the exclusion of the statements did not rise to the level of substantial prejudice or injustice to the defendant, as the record revealed that the court, without objection, heard testimony from the defendant that effectively conveyed the substance of the subject statements, but that it found more credible the plaintiff's testimony that she had appropriately disciplined the child, and it found that the defendant was without justification in denying the plaintiff access to the child.

2. The defendant could not prevail on his claim that the trial court failed to determine that the evidence establishing its finding of contempt met the required clear and convincing standard of proof; neither the court's oral decision nor its written order indicated what standard of proof the court had applied, and because the defendant did not seek an articulation or reargument of the court's decision, it was not otherwise clear from the record that an improper standard had been applied and this court presumed that the trial court had applied the correct standard of clear and convincing evidence.

3. Although the defendant's claim challenging, as punitive, the trial court's imposition of the stayed incarceration order was moot given that the court had vacated that order, the claim was reviewable because it quali-

fied for the capable of repetition yet evading review to the mootness doctrine, as the challenged action was by its very nature of a limited duration so that there was a strong likelihood that the substantial majority of cases raising a question about its validity would become moot before appellate litigation could be concluded, there was a reasonable likelihood that the question presented would arise again in the future, and the issue of whether a court appropriately may employ a stayed incarceration order to monitor ongoing future compliance with a visitation order that has been violated was a matter of sufficient public importance; nevertheless, the stayed incarceration order was not improper, as the order never reached a point where it became punitive in that the court gave the defendant the ability to purge himself of the threat of incarceration by complying with the visitation order for a limited duration, and the order accomplished its purpose of obtaining the defendant's compliance with the visitation order.

4. The defendant could not prevail on his claim that the trial court abused its discretion by failing to consider his ability to pay the plaintiff attorney's fees and marshal fees, he having waived his right to raise that claim on appeal, as he failed to bring that objection to the attention of the court at the time that it considered the plaintiff's request for attorney's fees and marshal fees, and he did not raise any objection to the plaintiff's request for fees; nevertheless, the court erred in imposing compensatory fines on the defendant without any evidence as to actual damages suffered by the plaintiff, as the court failed to provide a factual basis for the amount of its award of compensatory damages to the plaintiff, nor was there any evidence presented that the plaintiff, apart from her claimed attorney's fees and costs of marshal service, incurred any other pecuniary loss as a result of the defendant's contumacious conduct.

Argued January 9—officially released August 1, 2017

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Windham at Putnam and tried to the court, *Graziani, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *A. dos Santos, J.*, denied the defendant's motion to modify visitation and granted the plaintiff's motion for contempt, and the defendant appealed to this court. *Reversed in part; judgment directed.*

*David A. Golas*, for the appellant (defendant).

*Andrew S. Knott*, with whom, on the brief, was *Robert J. Santoro*, for the appellee (plaintiff).

*Opinion*

KELLER, J. In this postdissolution proceeding, the defendant, David D. Medeiros, appeals from the judgment of the trial court finding him in contempt for violating an order providing the plaintiff, Christine Medeiros, with access to their minor child. The defendant claims that the court committed error in (1) failing to allow him a fair opportunity to present a defense to the plaintiff's motion for contempt; (2) failing to require that the evidence establishing its finding of contempt met the required clear and convincing standard of proof; (3) preventing the defendant from testifying as to statements made to him by the minor child about events occurring during a visit with the plaintiff; and (4) imposing certain sanctions, including monetary fines. We agree with the defendant that the monetary fines imposed on him by the court were improper, accordingly, we reverse that part of the judgment of the trial court. The judgment is affirmed in all other respects.

The following facts, as determined by the trial court in its oral decision of June 3, 2015,[1] and procedural history are relevant to this appeal. The parties were divorced on February 28, 2013. There is one child issue of the marriage, who was born in 2007. A parental responsibility plan, agreed to by the parties, was incorporated into the judgment of dissolution. That plan awarded joint legal custody and shared physical custody of the child to the parties. Subsequent to the date of the judgment of dissolution and prior to the contempt hearing that is the subject of this appeal, there were five separate modifications of the judgment affecting the orders pertaining to custody and access to the child. The first two of these subsequent modifications awarded the defendant sole legal custody of the child and required that the plaintiff's visitation with the child be supervised, but the final modification, issued by the court, *Boland, J.*, on April 7, 2015, restored the parties' joint legal custody, and the plaintiff was afforded access consisting of unsupervised visits, with overnight visits resuming effective July 30, 2015.[2] The order also noted that the child's court appointed guardian ad litem, Tracie Molinaro, would be discharged effective July 30, 2015.[3]

On May 13, 2015, the plaintiff filed a motion for contempt alleging that on May 12, 2015, in violation of the April 7, 2015 order, the defendant refused to allow her access to the child and had threatened to stop all visitation.[4] The motion was heard by the court, *dos Santos, J.*, on June 3, 2015. The court heard testimony from the plaintiff and the defendant. At the conclusion of the hearing, following a recess, the court issued its oral decision setting forth the factual basis for its finding that the defendant was in wilful contempt of the April 7, 2015 order. The court stated: "The court finds that the [plaintiff] did not access visitation, as ordered by

Judge Boland, and the denial of access visitation occurred on May 12, on May 15, and May 17, and that the denial was without justification.[5]

"There was an incident, while the child was in [the plaintiff's] custody/visitation/access, where [the plaintiff] disciplined the child. The court finds, based upon the credible testimony, that [the plaintiff] acted appropriately in disciplining the child. And the court also further finds that the child was not physically disciplined by [the plaintiff]. The court finds that the child acted unruly, and the [plaintiff] appropriately disciplined the child. The court notes that, in this instance, the child does not have a say on whether or not he wants to visit with [the plaintiff].

"The court finds that [the defendant's] actions in utilizing the recommendations of the [guardian ad litem] and the child's counselor are being used to alienate the ability of [the plaintiff] to parent this child, and that [the defendant's] actions are in wilful disregard of the orders that were imposed by, only a short time ago . . . Judge Boland.

"The court notes in making its findings that the [defendant] did not notify the police until he decided that he was going to stop visitation, that he did not contact [the Department of Children and Families] if [the defendant] was so concerned about the child's welfare and well-being. And the court cannot find that [the plaintiff] exposed the child to unsafe conditions or situations." (Footnote added.)

The court then imposed sanctions. It ordered that the defendant be incarcerated for a period of ten days; that he be fined for each day that he denied the plaintiff access to her child at the rate of $100 per day, for a total of $300; that he be fined for violating the court's order in the amount of $500; and that he pay the plaintiff attorney's fees of $2500 and marshal fees for service in the amount of $143 within sixty days. With respect to the ten day order of incarceration, the court stated: "Now, insofar as the ten days ordered incarceration, the court will not, at this point, incarcerate the defendant, but give him an opportunity to allow the court-ordered visitation, that was ordered by Judge Boland, to take place. So, the court will not impose the incarceration at this time, but it is there, and the court, then, will consider whether or not to vacate it entirely upon successful—upon the court being satisfied that [the defendant] has complied with the court-ordered visitation."[6] On June 3, 2015, the court also issued a written order reiterating, without reference to the factual findings it had made in its oral decision that same day, its finding of wilful contempt and the sanctions it had imposed, and adding that all of the fines imposed were to be paid within twenty days. This appeal followed. Additional facts will be set forth as necessary.

I

We address the defendant's first and third claims together because they both relate to claimed error on the part of the court in not permitting him to present a defense to the motion for contempt. The defendant's first claim is that the court erred in failing to allow him a fair opportunity to present his defense, and his third claim is that the court erred in failing to allow him to testify as to statements made to him by the child about events occurring during a visit on May 10, 2015, with the plaintiff.[7] Specifically, the defendant asserts that after allowing the plaintiff to testify as to what had occurred on May 10, 2015, during her visit with the child, including statements that she testified the child had made to her,[8] he was not permitted to testify as to what the child told him when the child returned to the defendant's home after the visit.

We begin by setting forth the applicable standard of review for evidentiary claims. "To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." (Citation omitted; internal quotation marks omitted.) *State* v. *Miguel C.*, 305 Conn. 562, 571–72, 46 A.3d 126 (2012).

"In a civil case, the appellant has the burden of establishing the specific harmfulness of the error by demonstrating the likelihood that the evidentiary ruling had affected the result." (Internal quotation marks omitted.) *Johnson* v. *Johnson*, 111 Conn. App. 413, 420, 959 A.2d 637 (2008).

Relative to the issue of whether the court erred in sustaining the plaintiff's objections to the defendant's testimony as to what the child reported to him after the May 10, 2015 visit, the following testimony occurred during the direct examination of the defendant.

"[The Defendant's Counsel]: Mr. Medeiros, you were in court April 7 when Judge Boland entered orders for visitation, correct?

"[The Defendant's Counsel]: And keep your voice up.

"[The Witness]: Okay.

"[The Defendant's Counsel]: Either that or I'll stand at the back of the courtroom and you'll have to yell at me.

"[The Witness]: Okay. Yes.

"[The Defendant's Counsel]: And from that day forward did you immediately start providing the visitation that Judge Boland had ordered?

"[The Witness]: Yeah. I was happy.

"[The Defendant's Counsel]: And how—when [the child would] come home did he express concerns to you over what was happening—

"[The Plaintiff's Counsel]: Objection. That would be hearsay just as well.

"[The Defendant's Counsel]: No. I didn't ask—I'm not asking—his state of mind—

"The Court: Well, it calls for a yes or no. I'll allow the question.

"[The Witness]: Yes.

"[The Defendant's Counsel]: Okay. Did you discuss these concerns with [the plaintiff]?

"[The Witness]: Yes.

"[The Defendant's Counsel]: And all during the time between April 7 and May 10 was [the child] provided with a cell phone?

"[The Witness]: Yes, he was. A safety phone.[9]

"[The Defendant's Counsel]: And what was your understanding as to the use of the cell phone? Why was he given a cell phone?

"[The Witness]: [The child] was given a cell phone on the recommendation, actually, of Judge Boland, where [the child] could have a safety phone. If he felt uncomfortable he could—or if something wasn't—if he needed to—if he needed some reassurance or if he needed to come home he could call. It was his safety phone. He discussed that with his counselor as well.

"[The Defendant's Counsel]: All right. And did you receive several phone calls between April 7 and May 10 from [the child]?

"[The Witness]: Yes, I did.

"[The Defendant's Counsel]: Okay. And did you terminate any of the visits because of the phone calls?

"[The Witness]: No, I didn't.

"[The Defendant's Counsel]: What would you normally tell [the child]?

"[The Witness]: Well, I would listen to what was going on, and I'd ask him to wait a little bit more time to see if things could turn around, and typically he would call

back and say, well, things are—you know, I feel a little bit better now, things are going good.

"[The Defendant's Counsel]: Did you ever terminate a visit before May 10 because of a phone call?

"[The Witness]: No, I didn't.

"[The Defendant's Counsel]: Okay. On May 10 did you terminate a visit, that was Mother's Day?

"[The Witness]: On Mother's Day, no, I didn't. But the visits prior to that [the child] was—

"[The Plaintiff's Counsel]: I'm going to object. I mean, we already put the time period as of May 12. The fact that he complied with the court order for some limited period of time should not have earned him any gravy points, and it's completely relevant. The relevancy is his conduct on May 12. Okay.

"The Court: Sustained.

"[The Defendant's Counsel]: Your Honor, I'm going to claim it, because we're looking at a reasonable cause to deny a visit, and this is based on a course of conduct—increasing course of conduct. It wasn't a one day affair, it was an increasing course—

"The Court: I sustained the objection. Ask your next question.[10]

"[The Defendant's Counsel]: On May—again, on May 10 were there concerns raised—

"[The Plaintiff's Counsel]: Objection again, Your Honor.

"[The Defendant's Counsel]: This is where—

"[The Plaintiff's Counsel]: It's the same question.

"The Court: Well, let her ask the question.

"[The Defendant's Counsel]: The plaintiff started—

"The Court: Let counsel ask the question.

"[The Defendant's Counsel]: The plaintiff started testifying about May 10, and the events of May 10. I'm asking for the same date.

"The Court: Again, what's the relevance or the—

"[The Defendant's Counsel]: Because it was—

"The Court: What is your offer of proof on that issue?

"[The Defendant's Counsel]: That the child indicated such an unsafe situation at [the plaintiff's] house, which was corroborated by [the plaintiff], that [the defendant] felt [it] was unsafe to allow the child to see the [plaintiff] on the next visitation day, which was a Tuesday. And, again—

"The Court: That's the reason?

"[The Defendant's Counsel]: Yes, Your Honor.

"The Court: Objection sustained. Ask your next question.

"[The Defendant's Counsel]: Why did you not let the—[the child] go to visit—to see [the plaintiff] on May—on Tuesday?

"[The Witness]: [The child] came home [shaken] to his core. He was very, very upset, very scared. He was discussing many things that had happened, and it was very alarming and concerning. He was saying—he had told me that he was being screamed at, that he was being pushed, that he was being sworn at, that he was grabbed by his forearms, picked up into the air and slammed into a chair. He was—

"[The Plaintiff's Counsel]: Your Honor, I'm going to object. First of all, it's all hearsay—

"[The Witness]: He was—he explained to me that—

"[The Plaintiff's Counsel]: Objection.

"[Unknown Speaker]: One moment, sir. One moment.

"The Court: Sustained.

"[The Defendant's Counsel]: Your Honor. Your Honor, if—we're looking at the causes that—the justification for the termination. Whether these events occurred the issue is whether [the defendant] was reasonable in his understanding of what was going on. There's no other way—whether they occurred or not—and, again, the [plaintiff] has given some evidence these events did occur. The issue is whether he had reasonable cause to take the steps he did.

"[The Plaintiff's Counsel]: I'm going still—

"The Court: Sustained. Ask your next question.

"[The Plaintiff's Counsel]: The issue is a contempt motion and whether he had—

"[The Defendant's Counsel]: He brought it out.

"[The Plaintiff's Counsel]: Okay. No. I did not bring it out.

"[The Defendant's Counsel]: With [the plaintiff]. He asked [the plaintiff] what happened on May 10.

"[The Plaintiff's Counsel]: He's basing it solely on the hearsay evidence of an eight year old boy, who we have no corroboration whatsoever, except for the testimony of the [defendant] who allegedly or—okay—committed contempt of a court order, and he's facing to go into prison.

"[The Defendant's Counsel]: The—

"The Court: Ask your next question.

"[The Defendant's Counsel]: Your Honor, are you barring me from bringing up any evidence as to the reason [the defendant] made this decision?

"The Court: You can ask him that.

"[The Defendant's Counsel]: I just did, Your Honor. That was my question.

"The Court: No. He testified of what [the child] said to him.

"[The Defendant's Counsel]: I'm asking him why he decided to—

"The Court: Well, then ask him that question.

"[The Defendant's Counsel]: Why did you decide to terminate—or not allow a visit on Tuesday, May—May 12?

"[The Witness]: Okay. [The child] came—[the child] was very distraught, he was very upset. He explained many things to me. I contacted [the plaintiff], I contacted the guardian ad litem, and I contacted [the child's] counselor to discuss these concerns. I made an appointment for [the child] to see his counselor. [The plaintiff] confirmed that these things had happened and, you know, we had a discussion if, you know—if these—if this was healthy and is this safe and, you know—it was obvious that it's not safe or healthy—

"[The Plaintiff's Counsel]: Objection—

"[The Witness]: —and—

"[The Plaintiff's Counsel]: —to his conclusions.

"The Court: I'll strike his opinion on whether it was safe and unhealthy.

"[The Defendant's Counsel]: Did—was it your understanding that [the child] was not allowed contact—allowed his telephone to call you, his safety phone?

"[The Witness]: Yeah. Yes.

"[The Defendant's Counsel]: Was it your understanding that [the plaintiff] had picked him up and put him in a chair physically?

"[The Witness]: Yes.

"[The Defendant's Counsel]: And is there a provision in the court order of May 7 saying that there should be no physical discipline of the child?

"[The Witness]: Yes. Absolutely." (Footnote added.)

The defendant claims that the court prevented him from explaining why his reaction to the child's report to him of what had occurred during the visit with the plaintiff on Sunday, May 10, 2015, was reasonable and, thus, did not constitute a wilful violation of the court's order.[11] He maintains that the court improperly sustained the plaintiff's objections to the admission of evidence of what the child reported to him as hearsay although he had offered it not for the truth of the child's statements, but to show the child's state of mind after

the visit on May 10, 2015, which resulted in his reasonably justified decision to prevent visits from taking place on May 12, May 15, and May 17, 2015.[12] The plaintiff argues that the testimony was hearsay. We agree with the defendant that the court should have allowed the child's May 10, 2015 statements to him into evidence under the state of mind of the declarant exception to the hearsay rule, but, in light of the testimony the court eventually did hear from the defendant about the child's reported reaction to that visit, without objection from the plaintiff, we conclude that the error was harmless.

State of mind is an exception to the hearsay rule, referred to in our Code of Evidence as then-existing mental or emotional condition. See Conn. Code Evid. § 8-3 (4).[13] Several times during his testimony, the defendant indicated that the child had returned from the May 10, 2015 visit with the plaintiff "very upset, very scared," and "very distraught." The defendant's testimony was admissible to show the child's state of mind and emotional condition at the time rather than to prove the truth of what the child stated had occurred. The defendant was offering the statements of the child to explain the reasons the child provided for his emotional distress. Such evidence was relevant to whether the defendant's conduct in disallowing the next three visits was reasonable under the circumstances.[14]

The record, however, reveals that subsequent to the three times the court sustained the plaintiff's objections to the offer of the child's statements as hearsay, the court, without objection, heard testimony from the defendant that effectively conveyed the gist of the information he previously had attempted, unsuccessfully, to introduce. He was able to relay to the court that the child returned from the May 10, 2015 visit distraught and upset and had explained many things to him, including not being allowed to telephone the defendant when he felt unsafe, and being picked up and put in a chair physically. The court also heard evidence that after police officers spoke with the child at his school on May 15, 2015, they determined that rather than have a visit occur with the plaintiff, it was best that he go home with the defendant. The defendant also testified that he had concerns for the child's safety. Ultimately, the defendant was able to convey these points to the court. The court, however, found the plaintiff's testimony that she had appropriately disciplined the child more credible[15] and determined that the defendant's conduct in depriving the plaintiff of three subsequent visits was not justified. We, therefore, conclude that although the challenged testimony should have been admitted under the state of mind exception to the hearsay rule, the exclusion does not rise to the level of substantial prejudice or injustice to the defendant. "Although the defendant frames the appellate issue as one of a constitutional violation, [the] ultimate conclusion turns on evidentiary grounds. . . . It is a funda-

mental rule of appellate review of evidentiary rulings that if [the] error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. . . . The relevant inquiry is whether the claimed error of the trial court is likely to have affected the outcome of the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Samuels*, 75 Conn. App. 671, 715, 817 A.2d 719 (2003), rev'd on other grounds, 273 Conn. 541, 871 A.2d 1005 (2005). On the basis of our review of the record, we are not persuaded that the court's error likely affected the outcome of the trial. Accordingly, the defendant's first and third claims are without merit.

## II

The defendant's second claim is that the trial court failed to determine that the evidence establishing its finding of contempt met the required clear and convincing standard of proof. We disagree.

We first note the applicable standard of review. "The question of whether a trial court has held a party to a less exacting standard of proof than the law requires is a legal one. . . . Accordingly, our review is plenary." (Citation omitted.) *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 126, 981 A.2d 1068 (2009).

The defendant relies upon *Brody* v. *Brody*, 315 Conn. 300, 318–19, 105 A.3d 887 (2015), for the proposition that indirect civil contempt proceedings should be proven by clear and convincing evidence, and that because the court, in the face of the conflicting testimony of the plaintiff and the defendant, failed to state it had based its finding of contempt on clear and convincing evidence, it is not clear that the court weighed the evidence under the proper standard.[16] The plaintiff counters that the evidence sufficiently established by clear and convincing evidence that the defendant was in contempt of the court's order.

First, contrary to the plaintiff's argument with respect to this claim, the defendant does not contest the findings relied on by the court to conclude that his actions were wilful and in violation of the court's order. Rather, the defendant asks that the matter be remanded for a new hearing to assure that the court applied the proper standard of proof because the court's decision is silent on that particular point.[17]

The decision of our Supreme Court in *Kaczynski* v. *Kaczynski*, supra, 294 Conn. 121, is dispositive. Like the defendant in the present case, the defendant in *Kaczynski* claimed on appeal that the trial court's decision on a fraud claim should be reversed because the trial court failed to indicate, either explicitly or implicitly, that it was applying the clear and convincing standard of proof when making its findings of fraud. Id., 125.

"[A] defendant has an obligation to supply this court

with a record adequate to review his claim of error. . . . It is important to recognize that a claim of error cannot be predicated on an assumption that the trial court acted erroneously. . . . When a trial court in a civil matter requiring proof by clear and convincing evidence fails to state what standard of proof it has applied, a reviewing court will presume that the correct standard was used. If a party, following the rendering of the trial court's judgment, believes that the trial court potentially utilized the less stringent standard of preponderance of the evidence, that party has the burden of seeking an articulation if the decision is unclear . . . or reargument if impropriety is apparent; see Practice Book § 11-12; thus giving that court the opportunity to clarify the standard used or to correct the impropriety and thereby avoiding an unnecessary appeal. If, instead, the party forgoes articulation or reargument and instead chooses to raise the issue for the first time on appeal, the reviewing court will not presume error from silence as to the standard used." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Kaczynski* v. *Kaczynski*, supra, 294 Conn. 129–31.

Neither the court's oral decision nor its written order, both issued on June 3, 2015, indicate what standard of proof the court applied, and the defendant did not seek articulation or reargument of its decision.[18] Consequently, because it is not otherwise clear from the record that an improper standard was applied, we presume that the court applied the clear and convincing evidence standard. Accordingly, we are not persuaded by the defendant's second claim.

### III

The defendant's final claim is that the court erred in the imposition of sanctions for his contempt. Specifically, the defendant challenges the propriety of both fines, the ten day order of incarceration, and the award to the plaintiff of attorney's fees and costs. The plaintiff counters that all of the court's imposed sanctions were appropriate. We agree with the defendant that the fines imposed were improper but conclude that there are no grounds to reverse any of the other sanctions the court ordered.

We begin with a discussion of the nature of the contempt proceeding in the present case and the type of sanctions that may be imposed. "[C]riminal contempt is conduct directed against the authority and dignity of the court, while civil contempt is conduct directed against the rights of the opposing party. . . . A contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public. . . . Sanctions for civil contempt may be either a fine or imprisonment; the fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for

losses sustained." (Internal quotation marks omitted.) *DPF Financial Holdings, LLC* v. *Lyons*, 129 Conn. App. 380, 385, 21 A.3d 834 (2011). Because the grounds for the motion for contempt and sanctions in the present case were to serve the purposes of and to compensate the plaintiff, we conclude that the contempt was properly classified as civil, rather than criminal, in nature. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . Contempts of court may also be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court." (Citation omitted; internal quotation marks omitted.) *Edmond* v. *Foisey*, 111 Conn. App. 760, 769, 961 A.2d 441 (2008). The plaintiff in this case alleged in her motion for contempt that the defendant failed to comply with the court's order, thus depriving her of visitation with the child. Because this occurred outside of the court's presence, the contempt is properly classified as indirect civil contempt.

### A

We first address the stayed order of incarceration. The record reveals that on June 24, 2015, the court vacated its order of incarceration, which had been stayed. Neither of the parties brought this fact to our attention in their respective briefs. On February 22, 2017, we ordered the parties to file simultaneous supplemental briefs to address the following issue: "If this court determined that the contempt finding was proper, in determining the propriety of the sanctions that were imposed, should this court dismiss that portion of the appeal challenging the imposition of the incarceration order as moot?" Having reviewed the supplemental briefs, we conclude that the issue of the propriety of the incarceration order satisfies an exception to the mootness doctrine because it is capable of repetition yet evading review.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) *Rocque* v. *Design Land Developers of Milford, Inc.*, 82 Conn. App. 361, 369 n.3, 844 A.2d 282 (2004). "If there is no longer an actual controversy in which [this court] can afford practical relief to the parties, we must dismiss the appeal." (Internal quotation marks omitted.) *Fiddelman* v. *Redmon*, 59 Conn. App. 481, 483, 757 A.2d 671 (2000). "In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." *Hechtman* v. *Savitsky*, 62 Conn. App. 654, 659, 772 A.2d 673 (2001). We recognize that an appeal challenging the validity of a court's finding of contempt, even when purged by making payments, is not moot because a contempt finding has collateral consequences in that it may impact the con-

temnor's future status in the action. "For example, a future citation for contempt, given the first finding of contempt which is the subject of [the same] case, would make the defendant appear more recalcitrant than he might be, in fact. Such an impression is likely to affect a trial court's determination of the penalty attendant on any future finding of contempt in this [same] case." *Sgarellino* v. *Hightower*, 13 Conn. App. 591, 594–95, 538 A.2d 1065 (1988). In the present case, however, having found no error in the court's finding that the defendant was in contempt, the collateral consequences of that finding remain attached regardless of the propriety of the sanctions imposed. Accordingly, there would be no reason to review the propriety of the sanctions on the basis of collateral consequences that will continue to flow from the contempt finding regardless of whether some of the sanctions ordered upon a valid finding of contempt were improper.

If a controversy is moot, however, it is still justiciable if it meets the requirements of the "capable of repetition, yet evading review" doctrine, an exception to the mootness doctrine. See *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004). Our Supreme Court has articulated the following three requirements for an otherwise moot controversy to be justiciable under this exception. "First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance." *Loisel* v. *Rowe*, 233 Conn. 370, 382, 660 A.2d 323 (1995).

With respect to the first requirement, we recognize that most incarceration sanctions imposed pursuant to a finding of contempt in a family case, even if incarceration is stayed, are of limited duration. An incarcerated person will either purge the contempt and be released from imprisonment or be released when the court concludes, upon further review, that the contemnor is unable to purge.[19] Where the order is stayed to monitor compliance, such monitoring in most cases will occur over the span of, at most, a few continuances unless the continued failure to comply results in further contempt findings and sanctions.

As to the second requirement, the defendant notes that there is a reasonable likelihood that the question presented in this case will arise again in the future between the same parties and may affect him. The custody and visitation issues in this case have generated

considerable court business since the date of the judgment of dissolution in 2013. We take judicial notice of the trial court file in this case, which indicates that disputes concerning the plaintiff's access to the child are ongoing. The defendant filed a motion to suspend all of the plaintiff's visits on July 10, 2015, barely a month after the contempt ruling at issue in this appeal was issued. Subsequently, after the court ordered coparenting counseling on October 27, 2015, the plaintiff filed two motions for contempt concerning the defendant's refusal to participate. The defendant also can be said to be representative of all alleged contemnors in questioning the authority of a court to issue an incarceration order upon a finding of contempt, but stay that incarceration to monitor future compliance with the order that the contemnor was found to have violated. This is not an isolated incident not likely to be repeated in the foreseeable future in the present case or in other future cases involving contempt of parental access orders. See *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 574, 499 A.2d 1158 (1985).

Finally, we consider the issue of whether a court appropriately may employ a stayed incarceration order to monitor ongoing future compliance with a visitation order that has been violated to be a matter of sufficient public importance. Ensuring compliance by a custodial parent with appropriate orders granting visitation to the other parent can be a particularly vexing dilemma that must be addressed to protect both the best interests of the child and the visiting parent's fundamental "right to family integrity, including the right to the care, custody, companionship and management of one's children . . . ." *Roth* v. *Weston*, 259 Conn. 202, 210, 789 A.2d 431 (2002). We further recognize that cases regularly arise where the custodial parent displays a blatant disregard of a court order providing the other parent with meaningful contact with the child. We think it is important to determine whether the particular weapon of a stay of incarceration to monitor future compliance for a limited duration should properly remain in the trial courts' arsenal for enforcing their orders. Therefore, we conclude that the exception to the mootness doctrine applies in the present case and determine that the issue as to the propriety of the incarceration order is capable of repetition, yet evading review.

Having determined to review the issue, we agree with the plaintiff that the stayed incarceration order was not improper. Although the defendant might have resumed his compliance with the plaintiff's parental access order in the few weeks immediately preceding the contempt hearing, he had begun violating the order almost immediately after the court, *Boland, J.*, had concluded a contested hearing and modified the visitation orders to expand what previously had been the plaintiff's very limited access to the child. This resulted, almost immediately, in the plaintiff having to expend further sums

of money and time to enforce rights that she only recently had obtained after a contested hearing. The defendant claims that the incarceration order was punitive because he had no ability to purge his contempt because if he was incarcerated for ten days, he would not be able to adhere to the visitation schedule. This misrepresents the nature of the order. The court gave him the ability to purge himself of the threat of incarceration by complying with the visitation orders for a limited duration. The defendant, therefore, had the ability to prevent his incarceration altogether if he continued to remain compliant, which he did, resulting in the vacating of the incarceration order only a few weeks after it was entered. Such an order also enabled the plaintiff to await the outcome of this conditional test of the defendant's continued willingness to comply without having to immediately resort to the expense of initiating another motion for contempt and serving another citation on the defendant. The defendant was provided with the keys to continuing freedom from incarceration by exhibiting a short period of full compliance. As a result of such compliance, the court would have no justification for vacating the stay and imposing a ten day term of incarceration.

Civil contempt sanctions are intended to operate in a prospective manner and are "designed to compel future compliance with a court order . . . and avoidable through obedience . . . ." *International Union, United Mine Workers* v. *Bagwell*, 512 U.S. 821, 827, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994). We decline to deprive our trial courts of the useful sanction of a stayed incarceration order and conclude that a court, confronted with a contemnor who has displayed unsatisfactory reasons for his refusal to follow the court's orders, should have the authority, as part of the contempt process, to require, as a condition of a stayed order of incarceration, the contemnor's continued appearance before the court for the purpose of monitoring his future compliance for a reasonable time period. We acknowledge that in the event the contemnor returns to court on a future date for the purpose of monitoring his compliance and is shown to have persisted in his noncompliance, there is a legitimate question as to whether the court could immediately impose the stayed incarceration without further process by providing the contemnor with an opportunity to be heard and the imposition of a newly crafted sanction that would provide him with the ability to purge his contempt. If the court imposed the ten days of incarceration previously stayed, there would have to be an additional order with which the defendant could comply to secure his release or to reduce the length of his imprisonment, or the incarceration "[will] not have been coercive, it [will] have been a purely punitive sanction for a previous . . . violation. There [will] have been no opportunity . . . to purge himself of the civil contempt." *Eric S.* v.

*Tiffany S.*, 143 Conn. App. 1, 11, 68 A.3d 139 (2013). The present case, however, never reached a point where the incarceration order imposed became punitive, and the stayed incarceration order accomplished its purpose—the defendant, who controlled his own destiny, complied with the access order and avoided being jailed.

### B

Before discussing the specifics of the defendant's claim as it relates to the fines imposed, we identify the applicable standard of review. "[In *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 738, 444 A.2d 196 (1982),] the [Supreme Court] reviewed the claim that the penalties imposed by the trial court were improper and an abuse of discretion. . . . These claims are reviewable in an appeal from the contempt judgment *because the contemnor must have some remedy for* unauthorized or *excessive penalties*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Edmond* v. *Foisey*, supra, 111 Conn. App. 774. Accordingly, we review the propriety of the fines imposed pursuant to an abuse of discretion standard.

The defendant first argues that the court exceeded its discretion in ordering, as a sanction for his contempt, a compensatory damages award to the plaintiff of $100 per day as a fine for each day that the defendant denied the plaintiff access with the child, for a total of $300. The defendant asserts that this fine has no basis in fact. The court also imposed "a fine of $500 for violating the court's order" without directing to whom the fine was payable. The defendant argues this $500 fine was improper as a civil contempt fine if the court intended that it be paid to the plaintiff because it also lacked any basis in fact. He further argues that if the court intended this $500 fine to be payable to the state, the court improperly imposed a criminal contempt fine. Because we presume the court correctly analyzed the law in rendering its judgment; *DiBella* v. *Widlitz*, 207 Conn. 194, 203–204, 541 A.2d 91 (1988); absent a clear indication to the contrary, we decline to infer that the court engaged in the procedural irregularity of conducting a nonsummary criminal contempt proceeding in the context of a motion for contempt filed by a party in a family relations matter.[20] On the basis of the record before us, we conclude that the court correctly understood it was conducting a civil contempt proceeding and, therefore, all of the fines it imposed were intended to compensate the plaintiff.

Civil contempt fines, however, must be based on actual loss. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed . . . to compensate the complainant for losses sustained. . . . Where compensation is intended, a fine is imposed, payable to the complainant. *Such fine must of course be based upon evidence of [the] complainant's actual*

*loss* . . . . Civil contempt proceedings are *not* punitive—*i.e.*, they are not imposed for the purpose of vindicating the court's authority—but are purely remedial. . . . [I]t is well settled . . . that the court may, in a proceeding for civil contempt, impose the remedial punishment of a fine *payable to an aggrieved litigant as compensation* for the special damages he may have sustained by reason of the contumacious conduct of the offender. . . . [S]uch a compensatory fine must necessarily be limited to the actual damages suffered by the injured party as a result of the violation . . . ." (Citations omitted; emphasis altered; internal quotation marks omitted.) *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 278–79, 471 A.2d 638 (1984). In the present case, the court failed to provide a factual basis for the amount of its award of compensatory damages to the plaintiff in the nature of the fines totaling $800, nor was there any evidence presented that the plaintiff, apart from her claimed attorney's fees and costs of marshal service, incurred any other pecuniary loss as a result of the defendant's contumacious conduct. Accordingly, we conclude the court erred in imposing compensatory fines on the defendant without any evidence as to actual damages suffered by the plaintiff.[21]

C

Finally, we address the defendant's claim that the award of $2500 in attorney's fees, plus $143 in marshal fees to the plaintiff was improper.[22] "[A]bsent contractual or statutory authorization, there can be no recovery, either as costs or damages . . . for counsel fees by a party from his opponent." (Internal quotation marks omitted.) *Marquardt & Roche/Meditz & Hackett, Inc.* v. *Riverbend Executive Center, Inc.*, 74 Conn. App. 412, 428–29, 812 A.2d 175 (2003). "When any person is found in contempt of an order of the Superior Court entered under [the applicable marriage dissolution statutes] the court may award to the petitioner a reasonable attorney's fee . . . . On appeal, we review the court's order for abuse of discretion." (Internal quotation marks omitted.) *Dowd* v. *Dowd*, 96 Conn. App. 75, 86, 899 A.2d 76, cert. denied, 280 Conn. 907, 907 A.2d 89 (2006).

The defendant claims that the court abused its discretion in ordering that the defendant pay attorney's fees to the plaintiff because its sole consideration was a review of the oral representation of the plaintiff's counsel to the court detailing his fees and expenses, and whether the charges appeared reasonable. The court, the defendant argues, failed to consider the total financial resources of the parties in light of the statutory criteria contained in General Statutes § 46b-62.[23] The defendant relies on *Miller* v. *Miller*, 16 Conn. App. 412, 418, 547 A.2d 922, cert. denied, 209 Conn. 823 (1988), in which the court stated: "In determining whether to award counsel fees, the trial court must consider the total financial resources of the parties in light of the

statutory criteria." (Internal quotation marks omitted.) The plaintiff claims that the court's consideration of the statutory criteria and the defendant's ability to pay the attorney's fees is implicit in its earlier determination, which occurred during the same hearing on June 3, 2015, that the defendant had the ability to pay 90 percent of the $1500 fee retainer for the newly appointed guardian ad litem.

The defendant does not contest the reasonableness of the amount of the attorney's fees requested by the plaintiff, which was supported by the bare representations of the plaintiff's counsel, not an affidavit, that he spent ten hours prosecuting the motion for contempt at a rate of $250 an hour. Rather, the defendant claims that the court abused its discretion by failing to consider his ability to pay the fees. Our careful review of the record reveals that the defendant not only failed to bring this objection to the attention of the court at the time that it considered the plaintiff's request for attorney's fees, but he also failed to raise any objection to that request. On this record, we conclude that the defendant waived his right to raise the present claim on appeal.

In *Smith* v. *Snyder*, 267 Conn. 456, 481, 839 A.2d 589 (2004), our Supreme Court reasoned: "[A]lthough a bare request for attorney's fees, without more, ordinarily would not suffice . . . we conclude that a reversal of the award in the present case is not justified in light of the defendants' failure, prior to this appeal, to interpose *any objection whatsoever* to the plaintiffs' request for attorney's fees. In other words, the defendants, in failing to object to the plaintiffs' request for attorney's fees, effectively acquiesced in that request, and, consequently, they now will not be heard to complain about that request." (Emphasis in original.) Subsequently, this court has followed the rationale in *Smith* in declining to review claims arising from an award of attorney's fees. See, e.g., *Florian* v. *Lenge*, 91 Conn. App. 268, 285, 880 A.2d 985 (2005); *Arcano* v. *Board of Education*, 81 Conn. App. 761, 770–71, 841 A.2d 742 (2004).

The judgment is reversed in part and the case is remanded with direction to vacate the $800 in fines imposed on the defendant; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Both parties have relied on the court's oral ruling of June 3, 2015. The record does not contain a signed transcript of the court's decision, as is required by Practice Book § 64-1 (a), and the defendant did not file a motion pursuant to Practice Book § 64-1 (b) providing notice that the court had not filed a signed transcript of its oral decision. Nor did the defendant take any additional steps to obtain a decision in compliance with Practice Book § 64-1 (a). In some cases in which the requirements of Practice Book § 64-1 (a) have not been followed, this court has declined to review the claims raised on appeal due to the lack of an adequate record. Despite the absence of a signed transcript of the court's oral decision or a written memorandum of decision, however, our ability to review the claims raised on appeal is not hampered because we are able to readily identify a sufficiently detailed

and concise statement of the court's findings in the transcript of the proceeding. See *State* v. *Brunette*, 92 Conn. App. 440, 446, 886 A.2d 427 (2005), cert. denied, 277 Conn. 902, 891 A.2d 2 (2006).

[2] The final modification, effective April 7, 2015, includes a number of conditions clearly related to ensuring the safety of the child. It requires that the plaintiff not have any third party present during her visits who is known to be a criminal or involved with the Department of Children and Families, or who is an alcoholic or substance abuser. The plaintiff also cannot permit any contact between the child and his maternal grandparents, and she cannot use alcohol twenty-four hours before or during visits or abuse illegal substances and must continue with her current treatment provider. In addition, the child is to be provided with a cell phone, and no corporal punishment is to be used by either parent or any third party on the child.

[3] Although apparently consulted by the defendant subsequent to the visit of May 10, 2015, Molinaro was not present for the contempt hearing on June 3, 2015, in order to make any recommendation to the court. On June 3, 2015, the court commenced the contempt hearing by replacing her as guardian ad litem with Attorney George Duhaime, whose fees, including a retainer of $1500 payable within thirty days, were to be paid 90 percent by the defendant and 10 percent by the plaintiff. Although General Statutes § 46b-54 (e) provides, in relevant part, that "[a] guardian ad litem for the minor child . . . shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child," the defendant has not raised any claim premised on Molinaro's absence as guardian ad litem on the date of the contempt hearing.

[4] Pursuant to Practice Book § 25-27, a motion for contempt must, inter alia, state "the specific acts alleged to constitute the contempt . . . ." During the hearing on the motion for contempt, the defendant failed to object when the plaintiff, without amending her motion, introduced evidence that she also was denied visits with the child on two additional days, May 15 and May 17. "[T]he proper way to attack a variance between pleadings and proof is by objection at the trial to the admissibility of that evidence which varies from the pleadings, and failure to do so at the trial constitutes a waiver of any objection to such variance." (Internal quotation marks omitted.) *Russo Roofing, Inc.* v. *Rottman*, 86 Conn. App. 767, 774 n.6, 863 A.2d 713 (2005).

[5] The plaintiff indicated that before the first missed visit on May 12, 2015, the defendant told her that the visitation was to stop and that she was not going to see the child until a safer environment was in place.

[6] The record reveals that on June 24, 2015, nine days after this appeal was filed, the court vacated the ten day incarceration order, finding that the defendant was in compliance.

[7] In reviewing the record and the defendant's appellate brief, we conclude that the real basis for those claims are evidentiary in nature, which the defendant has attempted to masquerade as a constitutional deprivation of his right to present a defense. The defendant has failed to cite any authority for the proposition that disallowing testimony as to a declarant's state of mind in a situation analogous to that on appeal is of constitutional magnitude, state or federal. We, therefore, address both of these claims as a single claim of evidentiary error. See, e.g., *State* v. *Walker*, 215 Conn. 1, 5, 574 A.2d 188 (1990) ("the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved" [internal quotation marks omitted]).

In addition, in the present case, after a thorough review of the record, we detect no denial of fundamental fairness or a specific constitutional right. The defendant was provided with all the due process safeguards that must be satisfied in a contempt hearing. He was advised of the allegations against him, had a reasonable opportunity to meet them by way of defense or explanation, was represented by counsel, and had a chance to testify and call other witnesses on his behalf, although he did not choose to call any other witnesses. See *Brody* v. *Brody*, 315 Conn. 300, 317–18, 105 A.3d 887 (2015).

[8] The defendant posed no objection to the plaintiff's testimony in this regard.

[9] On September 26, 2014, the court, *Boland, J.*, in modifying the terms of the plaintiff's access to the child, ordered unsupervised visits to resume and included an order that the child be provided with a cell phone so that if a problem with the plaintiff arose, the child could call the defendant to come pick him up. In the order issued by Judge Boland on April 7, 2015,

the parties were ordered to continue to provide the child with a cell phone.

[10] In his appellate brief, the defendant makes a brief reference to this particular ruling, but mischaracterizes it as another incident in which the court precluded his testimony as to what the child had stated to him about the visit occurring on May 10, 2015. The question posed, however, to which the plaintiff took objection, was broader in scope and attempted to explore the defendant's opinion as to how visitation had been going prior to May 10, 2015. The defendant has failed to provide any analysis as to why the court's sustaining of the plaintiff's objection, based on relevancy, was improper. We, therefore, deem any claim pertaining to this particular ruling as inadequately briefed and decline to address it. See *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 133, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014).

[11] "The inability of the defendant to obey an order of the court, without fault on his part, is a good defense to a charge of contempt." *Tobey* v. *Tobey*, 165 Conn. 742, 746, 345 A.2d 21 (1974). The defendant claimed that it was essential to disallow the plaintiff's visits due to concerns for the child's safety emanating from things that the child had expressed to the defendant and the recommendations of the guardian ad litem and the child's counselor.

[12] The record also reveals that, before the trial court, the defendant's counsel also may have been arguing that the testimony was not hearsay because it was not offered for its truth but only to show its effect on the hearer. See Conn. Code Evid. § 8-1 (3); *State* v. *Miguel C.*, supra, 305 Conn. 574 ("if used for the purported purpose of demonstrating the effect of the [declarant's] statement on the [hearer], the contested testimony [is] not hearsay"). Our thorough review of the defendant's arguments on appeal reflects that, in his principal brief, the defendant failed to rely on this argument. For the first time in his reply brief, the defendant argues that the child's statements were "related to the defendant's belief that it was unsafe for the . . . child to visit with the plaintiff at her home." (Emphasis omitted.)

To the extent that the defendant's reply brief invites this court to consider whether the evidence was admissible to demonstrate its effect on him, the hearer, we decline to address such argument for two reasons. First, we observe that the argument is not supported by any citation to or analysis of relevant law. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Citation omitted; internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016). Second, "[i]t is well established . . . that [c]laims . . . are unreviewable when raised for the first time in a reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Internal quotation marks omitted.) *SS–II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 302, 977 A.2d 189 (2009).

[13] Section 8-3 (4) of the Connecticut Code of Evidence provides: "A statement of the declarant's then-existing mental or emotional condition, including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement is a natural expression of the condition and is not a statement of memory or belief to prove the fact remembered or believed."

[14] "The rules of evidence are somewhat relaxed in trials having to do with a determination of custody of [or visitation with] an infant where it is necessary to learn of the child's psychology and preferences. Therefore it is sometimes pertinent to bring to the court's knowledge the temperament, disposition and reactions of the child by testimony that borders upon hearsay in that it embraces a recital of the child's remarks. Such testimony, however, is not strictly hearsay because the objective and the result are to look into the child's mind and not to establish the truth or falsity of other matters set up as facts." (Internal quotation marks omitted.) *Gennarini* v. *Gennarini*, 2 Conn. App. 132, 139–40, 477 A.2d 674 (1984); see also C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 8.9 (declarations of implied state of

mind of speaker as exception to hearsay rule).

[15] The plaintiff testified that she had placed the child in his room for a time-out for being disrespectful and that after the child calmed down, she called the defendant to explain what had occurred and then gave the phone to the child, who then gave the defendant an explanation similar to hers. She denied any physical or verbal abuse of the child.

[16] In *Brody*, the problem was not that the court was silent about what burden of proof it had applied when hearing an indirect civil contempt proceeding; rather, the problem in that case was that the court applied an incorrect standard of proof, the fair preponderance of the evidence standard. *Brody* v. *Brody*, supra, 315 Conn. 315.

[17] In his brief, the defendant's second claim is stated as follows: "The trial court never established the standard of proof applicable to the evidence offered on plaintiff's motion for contempt."

[18] See also footnote 1 of this opinion addressing the defendant's failure to comply with Practice Book § 64-1 (a) by seeking a signed transcript or a written memorandum of decision from the trial court.

[19] Practice Book § 23-20 provides: "No person shall continue to be detained in a correctional facility pursuant to an order of civil contempt for longer than thirty days, unless at the expiration of such thirty days such person is presented to the judicial authority. On each such presentment, the contemnor shall be given an opportunity to purge himself or herself of the contempt by compliance with the order of the judicial authority. If the contemnor does not so act, the judicial authority may direct that the contemnor remain in custody under the terms of the order of the judicial authority then in effect, or may modify the order if the interests of justice so dictate."

[20] If the $500 fine was intended to be payable to the state to vindicate the authority of the court, it would have been improper because it would only be "consistent with . . . punitive fines levied in criminal [not civil] contempt . . . ." *Board of Education* v. *Shelton Education Assn.*, 173 Conn. 81, 85, 376 A.2d 1080 (1977). Furthermore, such a fine only could be imposed pursuant to a nonsummary criminal contempt proceeding initiated pursuant to Practice Book §§ 1-17 and 1-18. See generally *State* v. *Murray*, 225 Conn. 355, 361–62, 623 A.2d 60, cert. denied, 510 U.S. 821, 114 S. S. Ct. 78, 126 L. Ed. 2d 46 (1993). Practice Book § 1-17 provides, in relevant part, that "[t]he judicial authority should defer criminal contempt proceedings when . . . (3) the misconduct did not occur in the presence of the court . . . ." A criminal contempt deferred under § 1-17 must be prosecuted by means of an information. The judicial authority may, either upon its own order or upon the request of the prosecuting authority, issue a summons or an arrest warrant for the accused. The case then proceeds as any other criminal prosecution. See Practice Book § 1-18.

[21] An award of court costs plus reasonable attorney's fees also has been viewed in the context of an indirect civil contempt proceeding as a proper remedial form of compensation consisting of actual losses suffered by a plaintiff as the result of contumacious conduct on the part of the defendant. See *DeMartino* v. *Monroe Little League, Inc.*, supra, 192 Conn. 280.

[22] Although the defendant claims that the award of marshal fees to the plaintiff was improper, he has failed to adequately brief this claim. Instead, he focuses his analysis only on the propriety of the attorney's fees award. We, therefore, consider the claim as to the award of the marshal's fee abandoned.

[23] General Statutes § 46b-62 (a) provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."