******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# K. S. *v.* C. S.*
## (AC 47229)

Alvord, Elgo and Cradle, Js.**

*Syllabus*

The plaintiff appealed from the trial court's judgment dissolving her marriage to the defendant and granting the defendant's motion for contempt. She claimed, inter alia, that the court improperly entered an order into the judgment of dissolution prohibiting contact between the parties' minor child and the plaintiff's boyfriend, A. *Held*:

The trial court did not abuse its discretion in ordering, as part of its custody and visitation orders, that the plaintiff shall not allow the child to have contact with A, as the court weighed the evidence before it in finding that contact with A was not in the child's best interests.

The trial court did not abuse its discretion in awarding the defendant final decision-making authority with respect to medical and educational issues for the parties' child.

The trial court did not abuse its discretion in finding the plaintiff in contempt of its order prohibiting contact between the parties' child and A, as the court found that the plaintiff was aware of the order and had wilfully violated it, its finding having been supported by the unrebutted documentary evidence that A was living at the marital residence with the plaintiff and the child.

The trial court abused its discretion in awarding attorney's fees to the defendant in connection with the defendant's motions for contempt, as portions of those fees were for counsel's time spent on other motions and proceedings, and, accordingly, the awards were vacated and the matter was remanded for further proceedings.

The trial court's factual findings underlying its child support and marital property division orders were clearly erroneous, and, because those orders were not severable from its alimony orders, the case was remanded to the trial court to refashion all of its financial orders.

Argued February 3—officially released April 22, 2025

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Danbury and tried to the court, *Figueroa Laskos, J.*; judgment dissolving the marriage, granting certain other relief, and finding the plaintiff in contempt, from which the plaintiff appealed to this court; thereafter, the trial court, *Figueroa Laskos, J.*, entered certain interim orders regarding the plaintiff's visitation with the minor child, and the plaintiff filed an amended appeal with this court. *Reversed in part*; *further proceedings*.

*Alexander J. Cuda*, for the appellant (plaintiff).

*Opinion*

ALVORD, J. The plaintiff, K. S., appeals from the judgment of the trial court dissolving her marriage to the defendant, C. S.,[1] which included a finding of contempt against the plaintiff. On appeal, the plaintiff claims that the court improperly (1) entered an order in the judgment of dissolution prohibiting contact between the parties' minor child and the plaintiff's boyfriend, A, (2) awarded the defendant final decision-making authority with respect to the child's medical and educational issues, (3) granted the defendant's motion for contempt alleging violations of the court's interim order prohibiting contact between the child and A, (4) ordered the plaintiff to pay attorney's fees in connection with the defendant's motions for contempt, (5) entered orders regarding child support, specifically challenging its factual findings as to the parties' incomes, and (6) entered

---

[1] On November 8, 2024, the defendant filed a notice of intent not to file a brief. Accordingly, we consider this appeal on the basis of the plaintiff's brief and the record, as defined by Practice Book § 60-4, and oral argument by the plaintiff.

orders regarding the division of marital property, specifically challenging its factual finding regarding the equity in the marital home.[2]

We disagree with the plaintiff's first and second claims. With respect to the third and fourth claims, we conclude that, although the court did not abuse its discretion in finding the plaintiff in contempt of its no contact interim order, its awards of attorney's fees constituted an abuse of its discretion. Accordingly, we remand the case for reconsideration of the attorney's fees awards. Finally, we agree with the plaintiff's fifth and sixth claims and conclude that the court made clearly erroneous factual findings underlying its child support and division of marital property orders. Because these orders are not severable from the other financial orders, we reverse the judgment of the trial court with respect to the financial orders and remand this case for a new trial on all financial issues.

The record reveals the following relevant facts and procedural history in this dissolution action that was highly contentious on the issues of custody and parenting arrangements. The parties were married on November 16, 2013, in Florida, and are the parents of one minor child, who was born in 2018. The plaintiff initiated the underlying dissolution proceeding in February, 2022.

On February 23, 2022, the plaintiff filed an application for a temporary restraining order against the defendant, which the court, *Hon. Heidi G. Winslow*, judge trial referee, granted ex parte. The plaintiff had alleged that the defendant was not taking his prescribed medications appropriately, was staying awake all night, and that she believed he was "in the midst of an extended manic episode." On March 1, 2022, the parties entered

---

[2] For ease of analysis, we address the plaintiff's claims in a different order than they are set forth in her brief.

into a stipulation that the temporary restraining order, pursuant to which the defendant would surrender or transfer all firearms and ammunition and would not assault, threaten, abuse, harass, follow, interfere with or stalk the plaintiff, would remain in effect until the earliest to occur of a subsequent written agreement of the parties, further order of the court, or sixty days from the date of the agreement, without prejudice to either party seeking a modification of the temporary restraining order.

In March, 2022, the court, *Hon. Heidi G. Winslow,* judge trial referee, approved the pendente lite agreement of the parties that the plaintiff would have exclusive use and possession of the marital home located in Brookfield (marital home), the plaintiff would have primary residential custody of the child, and the defendant would have supervised parenting time with the child.

At some point, the plaintiff began a romantic relationship with A, who was a friend of the defendant prior to and during the marriage; the defendant and A are no longer friends. In April, 2022, the defendant filed a motion for order alleging, on the basis of A's criminal conviction history and prior incarceration, that the defendant believed it was "not in the best interest" of the child to have any contact with A, and seeking that the court prohibit A from having any contact with the child.

On June 23, 2022, the defendant filed an application for a temporary restraining order on behalf of the child against A. The defendant alleged that A has an extensive criminal history and had hit the child. On July 7, 2022, the court, *D'Andrea, J.,* issued a restraining order requiring that A stay away from the marital home and have no contact with the child, to expire on July 7, 2023.

In July and August, 2022, the defendant filed a series of motions for contempt pendente lite, alleging violations of the court's orders related to parenting time and the automatic orders requiring the plaintiff to participate in the parenting education program. In December, 2022, the court, *Figueroa Laskos, J.*,[3] accepted and made an order of the court the parties' agreement to modify parenting time. The defendant was to have additional parenting time, and the parenting time was to be unsupervised. On May 25, 2023, the court entered interim orders with respect to the defendant's parenting time and also ordered that "[t]he plaintiff's boyfriend, [A], shall have no contact with the minor child" (interim no contact order).

The dissolution action, together with certain of the parties' pendente lite motions, was tried to the court over several days in April and May, 2023, with closing argument in September, 2023. The court, by agreement of the parties, also consolidated for trial an application for a restraining order that was filed on April 23, 2023, by the plaintiff against the defendant. The court heard testimony from the parties, both of whom were represented by counsel; A; two appraisers; and the defendant's stepfather; and it admitted numerous exhibits into evidence. Following the close of evidence, the court orally denied the restraining order application on the basis that the statutory requirements pursuant to General Statutes § 46b-15 had not been met.

On July 7, 2023, the restraining order on behalf of the child against A expired. Although the defendant filed a motion to extend the restraining order, the court, *Fox, J.*, dismissed it because of lack of service of process. After the close of evidence but before the court heard closing arguments, the defendant filed, on July

---

[3] Unless otherwise indicated in this opinion, all references to the trial court are to Judge Figueroa Laskos.

26, 2023, a motion for contempt pendente lite, alleging violation of the interim no contact order prohibiting A from having contact with the child. The plaintiff objected to the motion.

The court issued its memorandum of decision dissolving the parties' marriage on November 17, 2023. With respect to parenting orders, the court awarded the parties joint legal and shared physical custody of the child, with the defendant having final decision-making authority with respect to medical and educational issues, and set forth a parenting schedule. The court ordered the plaintiff to pay the defendant child support in the amount of $282 weekly, which the court noted was in accordance with the child support guidelines. The court ordered that the "plaintiff shall not allow the minor child to have any contact with [A] until further order of the court or written agreement of the parties; contact between [A] and the minor child shall be deemed a substantial change in circumstances" (dissolution judgment no contact order). Among other property division orders, the court awarded the plaintiff the marital home and ordered her to pay the defendant a property settlement in the amount of $133,500. The court ordered the plaintiff to pay the defendant periodic alimony in the amount of $260 weekly for five years from the date of dissolution. The alimony was made nonmodifiable as to the term. The court granted the defendant's motions for contempt alleging violation of the court's orders related to parenting time and prohibiting A from having contact with the child, and the court ordered the plaintiff to pay attorney's fees in the amounts of $1837.50 and $3675, respectively. Finally, the court ordered the parties to comply with Practice Book § 25-26 (g), which requires a party seeking to modify parenting orders to seek permission from the court.

On November 27 and December 1, 2023, the plaintiff filed motions for reargument and reconsideration, which were denied. This appeal followed.

On January 23, 2024, the defendant filed a postjudgment motion for modification, seeking sole legal and physical custody of the child on the basis that the plaintiff had permitted A to have contact with the child. On May 14, 2024, the court entered the following interim orders, to remain in effect until further order of the court: "The plaintiff's parenting time with the minor child shall be supervised. The plaintiff shall provide a supervisor for her parenting time to ensure that [A] is not present. If a supervisor is not available, the child shall be returned to the defendant . . . . The plaintiff shall provide the name and address of the supervisor to [the defendant's counsel]." The plaintiff filed an amended appeal thereafter.

On November 20, 2024, the court denied the defendant's motion for modification. The court found that, following the dissolution judgment, A lived with the plaintiff and that the plaintiff allowed A to have contact with the child. The court noted that the judgment prohibited such contact and found a substantial change in circumstances. Turning to the best interests of the child determination, the court found that it was not in the best interests of the child to modify the parenting plan. The court found that the plaintiff had followed the interim orders requiring supervised contact and that the plaintiff would be able to meet the child's best interests going forward. Accordingly, the court denied the defendant's motion for modification and vacated its interim order requiring the plaintiff's parenting time to be supervised. The court stated that "[t]he orders issued in the judgment remain in effect."

Also on November 20, 2024, the court issued the following order: "The plaintiff . . . agrees that she will not allow the minor child . . . to have contact with [A] during her parenting time and that if [A] is in her home during her parenting time that she will leave with the child and contact the defendant . . . to return the

child to his care if she does not have anywhere else to go. The court finds that this representation meets the child's best interests. It is made an order of the court modifiable by court order or written agreement of the parties." The plaintiff did not thereafter amend her appeal. See footnote 4 of this opinion.

On December 10, 2024, the plaintiff filed a motion to vacate the order prohibiting contact between the child and A. Therein, she alleged, inter alia, that the dissolution judgment no contact order is inconsistent with the parenting schedule and was not based on any findings that contact with A would harm the child or was contrary to the child's best interests. The motion to vacate was denied by the trial court on April 2, 2025. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff's first claim on appeal is that the court, in its November 17, 2023 memorandum of decision, improperly ordered that "the plaintiff shall not allow the minor child to have any contact with [A] until further order of the court or written agreement of the parties . . . ." We conclude that the court did not abuse its discretion.[4]

---

[4] We note, as an initial matter, that the plaintiff's appellate challenge to the dissolution judgment no contact order is not rendered moot by way of postjudgment orders. In its November 20, 2024 orders, the court stated that "[t]he orders issued in the judgment remain in effect." To the extent that the plaintiff's brief could be interpreted as raising issues related to the May 14, 2024 orders, we note that such issues are moot as those orders were vacated by the court's November 20, 2024 orders. See *Y. H.* v. *J. B.*, 224 Conn. App. 793, 796, 313 A.3d 1245 (2024) (to extent brief was interpreted as challenging pendente lite order, issues were moot as order was superseded by judgment of dissolution).

To the extent that the plaintiff argues in her brief that the court improperly ordered that any contact between A and the child shall be deemed a substantial change in circumstances, that issue also is moot.

"Before a court may modify a custody order, it must find that there has been a material change in circumstances *since the prior order of the court*, but the ultimate test is the best interests of the child. . . . These require-

We begin by setting forth the legal principles and standard of review relevant to this claim. "The trial court's authority to issue orders pertaining to the custody and visitation of minor children is prescribed by statute." *R. H.* v. *M. H.*, 350 Conn. 432, 441, 324 A.3d 720 (2024). General Statutes § 46b-56 (a) provides in relevant part that "the court may make or modify any proper order regarding the custody, care, education, visitation and support of the children if it has jurisdiction . . . . Subject to the provisions of section 46b-56a, the court may assign parental responsibility for raising the child to the parents jointly, or may award custody to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. . . ." "Under § 46b-56 (c), the court, in determining custody, must consider the best interests of the child and, in doing so, may consider, among other factors, one or more of the [seventeen] factors enumerated in the provision." *Zhou* v. *Zhang*, 334 Conn. 601, 632, 223 A.3d 775 (2020).

ments are based on the interest in finality of judgments . . . and the family's need for stability. . . . The trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties. . . . [I]ts inquiry is necessarily confined to a comparison between the current conditions and the last court order." (Citations omitted; emphasis added; internal quotation marks omitted.) *J. Y.* v. *M. R.*, 215 Conn. App. 648, 658, 283 A.3d 520 (2022).

In the present case, the defendant filed a postjudgment motion to modify custody, which was the subject of a hearing, and the court ruled on that motion on November 20, 2024. In its ruling, the court found that a substantial change of circumstances had occurred since the November 17, 2023 judgment of dissolution but that it was not in the best interests of the child to modify the parenting plan. Any future modification of custody will involve a determination of whether there has been a substantial change of circumstance since the court's November 20, 2024 order. Accordingly, the court's November 17, 2023 order that contact shall be deemed a substantial change in circumstances became inoperative following the court's November 20, 2024 order. Given that we cannot afford the plaintiff any relief, we express no opinion on the propriety of the challenged order.

"Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. . . . [I]n a dissolution proceeding the trial court's decision on the matter of custody is committed to the exercise of its sound discretion and its decision cannot be overridden unless an abuse of that discretion is clear. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child, the court is vested with a broad discretion. . . . [T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . .

"The trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant. . . . [E]very reasonable presumption should be given in favor of the correctness of [the trial court's] action. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence." (Internal quotation marks omitted.) *Baker-Grenier* v. *Grenier*, 147 Conn. App. 516, 519–20, 83 A.3d 698 (2014).

The plaintiff raises a number of contentions in support of her claim that the dissolution judgment no contact order is improper. First, she maintains that she was unable to comply with the order because the trial

court found that A lives with her at the marital home but "did not provide any means to reconcile then how the plaintiff was supposed to have her parenting time and prevent contact with A." She argues that "the trial court's orders are conditioning the plaintiff's parenting time on some ability of the plaintiff to remove [A] from the premises, without an evident means to do so." The plaintiff offers no relevant authority in support of a duty on behalf of the trial court to "reconcile" the presence of A at the marital home with the court's parenting time orders. See *Zhou* v. *Zhang*, supra, 334 Conn. 632 ("[w]hile the rights, wishes and desires of the parents must be considered it is nevertheless the ultimate welfare of the child [that] must control the decision of the court" (internal quotation marks omitted)). To the contrary, the court may establish limitations on parenting time based on the best interests of the child. See *Battistotti* v. *Suzanne A.*, 182 Conn. App. 40, 54, 188 A.3d 798 (rejecting claim that trial court's limitation of plaintiff's parenting time to town of Greenwich was inconsistent with court's finding that it was in best interests of child to spend significant, quality time with plaintiff), cert. denied, 330 Conn. 904, 191 A.3d 1000 (2018). Accordingly, we reject this argument.

Second, the plaintiff contends that the order was improper because it was premised on hostility between A and the defendant, rather than on the relationship between A and the child. Although the court considered A's actions toward the defendant, those actions were but one factor it considered in making its orders. See *Zilkha* v. *Zilkha*, 180 Conn. App. 143, 175, 183 A.3d 64 ("in matters involving custody and visitation, the court properly exercises its discretion by weighing all the facts and circumstances of the family situation" (internal quotation marks omitted)), cert. denied, 328 Conn. 937, 183 A.3d 1175 (2018). The court weighed the evidence before it in finding that A's "actions and his

presence are not in the child's best interest." Accordingly, we conclude that the plaintiff has not demonstrated that the court exceeded its broad discretion in crafting custody and visitation orders by ordering that the plaintiff shall not allow the minor child to have contact with A.

## II

The plaintiff next claims that the court abused its discretion in awarding the defendant final decision-making authority with respect to medical and educational issues. We are not persuaded.

The following additional procedural history is relevant. After finding that the plaintiff had not been accommodating with the defendant's work schedule nor had she made progress toward fostering a relationship between the child and the defendant, the court determined that "assigning a parent to have final decision authority on medical and educational issues will avoid the conflicts that currently exist. This is in the child's best interest." On the basis of these findings, the court entered the following order: "[The parties] shall have joint legal custody of the minor child . . . . The defendant shall have final decision-making authority on medical and educational issues, including the selection of a school, after considering the plaintiff's input. The plaintiff shall respond to a written request for input on medical and educational decisions within seventy-two hours. A lack of written response from the plaintiff within seventy-two hours is to be considered a no opinion response and [the defendant] shall solely proceed without the plaintiff's input."

The plaintiff's main challenge to this order is her position that the parties no longer had issues surrounding the defendant's work schedule and, thus, the

court should not have awarded the defendant final decision-making authority on the basis of the parties' inability to resolve issues with respect to work schedules. We are not persuaded that the absence of a current conflict as to scheduling precluded the court from determining that an award of final decision-making authority was necessary and that it was most appropriate that the defendant be given final decision-making authority. See *Desai* v. *Desai*, 119 Conn. App. 224, 231, 987 A.2d 362 (2010) ("[w]e are limited in our review to determining whether the trial court abused its broad discretion in awarding the defendant ultimate decision-making authority"). Accordingly, the plaintiff has not demonstrated that the court abused its discretion.

## III

The plaintiff's third claim on appeal is that the court improperly granted the defendant's motion for contempt alleging violations of the court's interim order prohibiting contact between the child and A. We are not persuaded.

The following additional procedural history is relevant to our resolution of this claim. Following the close of evidence on May 25, 2023, with closing arguments to be scheduled at a later date, the defendant's counsel requested certain interim orders, including that the court order the plaintiff to not permit A to be in the presence of the child.[5] The plaintiff's counsel objected "to any orders regarding [A]." The court stated: "And as for the request that [A] not be in the presence of the child as an interim order, that request—again, having heard all of the testimony and determining what's in the best interests of the child—the court does find that that is a request that meets the child's best interests.

---

[5] As noted previously, the defendant had filed a motion in April, 2022, seeking that the court prohibit A from having contact with the child, which was not adjudicated.

[A] is not to have any contact at all with the minor child." The plaintiff's counsel inquired of the court whether the no contact order was an interim order, subject to potential change in the final orders, and the court responded that it was. The court also entered its interim orders in writing, stating that "the plaintiff's boyfriend, [A] shall have no contact with the minor child."

Two months after the close of evidence but before closing argument was held, on July 26, 2023, the defendant filed a motion for contempt pendente lite. Therein, he alleged that the plaintiff wilfully and intentionally had violated the court's interim orders by permitting A to be in the presence of the minor child on more than one occasion. The defendant also filed a motion for order, seeking to reopen the evidence to allow his July, 2023 motion for contempt pendente lite to be heard. The plaintiff filed an objection to the motions for contempt and to reopen the evidence, maintaining that the interim orders had not been violated and, thus, the motions should be denied. On August 16, 2023, the court granted a caseflow request filed by the defendant and ordered that the motion to reopen the evidence would be heard by the court. On August 23, 2023, the court granted the motion for order to reopen the evidence.

On September 14, 2023, a hearing was scheduled on the defendant's motion for contempt and closing arguments on the dissolution trial. At the start of the hearing, the plaintiff's counsel indicated that the plaintiff would not be attending the hearing that day because she felt like she could not miss any more days of work. The court asked the defendant's counsel whether she had intended to call the plaintiff as a witness, and she responded that she had but also indicated that she was ready to proceed in the plaintiff's absence. The court then asked the defendant's counsel whether she was requesting that the court draw an adverse inference

based on the plaintiff's failure to appear, and the defendant's counsel responded that she was. The court stated that it would proceed, given that no request had been made to continue the matter. The plaintiff's counsel then requested a continuance, in light of the potential adverse inference. The court stated that it would proceed with the hearing and would hear from the plaintiff's counsel at the end.

The court then heard the testimony of the defendant and received several exhibits into evidence.[6] The defendant testified to driving by the marital home on a number of occasions, at different times of the day, and viewing A's vehicle parked in the driveway at times that the plaintiff had parenting time with the child. The defendant offered into evidence photographs showing A's vehicle parked at the marital home, evidence showing that A's address had been changed to the marital home, and social media postings.

Following the close of evidence on the motion for contempt, the court provided the plaintiff's counsel an opportunity to be heard regarding any request concerning the plaintiff being made available for testimony. After the court recessed to allow the plaintiff's counsel to contact his client, counsel stated that he withdrew his "request for further time and further opportunity even remotely." The court then held closing arguments with respect to both the dissolution trial and the motion for contempt.[7]

In its November 17, 2023 memorandum of decision, the court found that A previously had been convicted of, inter alia, assault in the second degree and violation

---

[6] A was subpoenaed by abode service at the marital home to appear at the September 14, 2023 hearing. A did not appear, and the court declined the defendant's request to issue a capias.

[7] In closing argument, the plaintiff's counsel stated: "Your Honor may be finding an adverse . . . [inference] in my client not being here and I understand that. But an adverse inference and evidence are two different things."

of a protective order. A's former spouse was the victim of the assault, which resulted in her receipt of a sixty year protective order against A. The court recounted that, on July 7, 2022, a restraining order had been entered prohibiting contact between A and the child, to extend to July 7, 2023. The allegations contained within the restraining order application were A's criminal history and that A had hit the child. The court found that, "[a]t least three times the plaintiff asked the defendant to modify the restraining order between [A] and the minor child as a bargaining chip to reach an agreement on the dissolution and parenting plan. The plaintiff placed her desire to allow [A] to have access to the minor child above the court's concern for the child's safety; this is not in the child's best interest."

With respect to the motion for contempt, the court reiterated its May 25, 2023 interim order prohibiting A from having any contact with the child and found such order to be clear and unambiguous. The court then made the following factual findings by clear and convincing evidence. Noting that A "displayed unrestrained anger while testifying," the court found that A had created a Facebook posting showing that he traveled to Florida with the plaintiff and the child and that he created such posting purposely to upset the defendant. The court also found that A had posted on Facebook a photograph showing that he was in the marital home. The court found: "The plaintiff, despite a court order restricting [A] from the minor child and the house, chose [A] over her child's safety. [A's] actions show a purposeful pattern to annoy the defendant and an indifference to court orders. This level of hostility is not in the best interests of the minor child. The court finds that [A's] actions and his presence are not in the child's best interests."

The court also found that A was living at the marital property. In support of this finding, the court found

that A has used the address of the marital home as his address since June 23, 2022. The court found that the United States Postal Service has been forwarding A's mail from an address in Danbury to the marital home.

The court made several findings with respect to instances in which A's vehicle was parked at the marital home. It was parked there during the plaintiff's parenting time with the child on August 1, 2023, and the vehicle remained parked there at 11:40 p.m., together with the plaintiff's vehicle. The court found that the defendant had driven by the marital home on August 21, 2023, and had seen A's vehicle parked there at 10:36 a.m., when the child was not at daycare.[8] As recently as September 7, 2023, the court found that A's car was parked at the marital home. On the basis of these findings, the court concluded that A was living at the marital home. The court further found that A "takes purposeful steps to show through Facebook that he is in the marital house."

The court found that the plaintiff's testimony, in hearings held prior to September 14, 2023, concerning A was not credible. The court drew an adverse inference against the plaintiff on the basis of her failure to appear in court on September 14, 2023, to refute that A lives with her and the child. The court found that the plaintiff was aware of the court's order that A have no contact with the child and that she had wilfully violated that order by allowing A to reside in the marital home and

_____

[8] The court additionally found: "The car was moved and again located at [the marital home] on August 23, 2023, at 10:36 a.m., and again at 11:40 p.m. [A.'s] car remained alone at the [marital home] on August 24, 2023, at 7:25 a.m.; the plaintiff was not scheduled for work that day until 12 noon. . . .

"On August 28, 2023, [A's] car was at the [marital home] at 6:03 a.m. along with the plaintiff's car; again, on Tuesday, August 29, 2023, at 7:25 a.m.; and on August 30, 2023, at 7:36 p.m. during the plaintiff's parenting time. The court finds credible that, approximately two weeks prior to September 14, 2023, the [defendant] observed [A] driving his black Jeep and [giving] the [defendant] the finger while driving by."

have contact with the child. On the basis of these findings, the court found the plaintiff in contempt.

On appeal, the plaintiff claims that the court improperly granted the defendant's motion for contempt. In support of this claim, she argues (1) the court erred in finding her not credible because she had not testified pertaining to the subject matter of the motion for contempt and (2) there was no evidence of contact between the child and A, and the adverse inference drawn by the court against the plaintiff could not provide such evidence.[9]

We begin by setting forth the legal principles and standard of review relevant to this claim. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . If the underlying court order was sufficiently clear and unambiguous, we . . . determine whether the trial court

---

[9] The plaintiff also argues that the defendant's motion for contempt did not comply with Practice Book § 25-27 (a) (2), which requires that a motion for contempt state "the specific acts alleged to constitute the contempt . . . ." She argues that hearsay statements of the parties' child and A's former landlord, which underlay the allegations of the motion, were not introduced into evidence at the hearing and, thus, she was not properly advised of the charges against her. We disagree with the plaintiff that the hearsay statements contained within the motion but not introduced into evidence at the hearing rendered the motion insufficient as to notice. The defendant's motion alleged that the plaintiff wilfully and intentionally had violated the interim no contact order in that A had been present at the marital home with the child. Thus, we conclude that the motion sufficiently placed the plaintiff on notice as to what actions would be the subject of the contempt hearing. See *O'Connell* v. *O'Connell*, 101 Conn. App. 516, 525, 922 A.2d 293 (2007).

Moreover, this court has stated that "[t]he proper way to attack a variance between pleadings and proof is by objection at the trial to the admissibility of that evidence which varies from the pleadings, and failure to do so at the trial constitutes a waiver of any objection to such variance." (Internal quotation marks omitted.) *Medeiros* v. *Medeiros*, 175 Conn. App. 174, 178 n.4, 167 A.3d 967 (2017); see id. (noting that defendant failed to object during contempt hearing when plaintiff introduced evidence that she was denied visits with child on two additional dates).

abused its discretion in issuing . . . a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. . . . [T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Casiraghi* v. *Casiraghi*, 200 Conn. App. 771, 787, 241 A.3d 717 (2020).

We first address the plaintiff's argument that the court erred in finding her not credible, given that she did not offer testimony, because of her nonappearance in court. Although the plaintiff correctly asserts that, when a party does not testify at a hearing, there is no finding to be made as to that party's credibility; see *W. K.* v. *M. S.*, 212 Conn. App. 532, 544, 275 A.3d 232 (2022); the court expressly stated that "the plaintiff's testimony concerning [A] *prior to September 14, 2023*, is not credible." Accordingly, we are not convinced that the court made a finding as to the plaintiff's credibility based on her absence. As to the plaintiff's contention that the credibility finding regarding her testimony prior to September 14, 2023, is improper because her testimony predated the filing of the motion for contempt and the allegations asserted therein, we assume without deciding that the court improperly introduced its prior credibility determination into the contempt proceeding. However, we are convinced that any such error is harmless in light of the court's detailed findings made on the basis of the unrebutted documentary evidence admitted at the hearing showing that A lived in the

marital home. In sum, the court's mention of its assessment of the credibility of the plaintiff's prior testimony does not "undermine appellate confidence in the court [fact-finding] process"; (internal quotation marks omitted) *Hospital Media Network, LLC* v. *Henderson*, 209 Conn. App. 395, 433, 268 A.3d 657 (2021), cert. denied, 343 Conn. 916, 274 A.3d 867 (2022); and, accordingly, we conclude that the court's reference to its credibility determination is harmless.

The plaintiff's second argument is that the court's finding that the plaintiff violated the interim no contact order by "allowing [A] to reside in the home where the minor child lives and have contact with the minor child" was erroneous because there was no evidence of actual contact between the child and A. Specifically, the plaintiff emphasizes the defendant's testimony that he had not seen the child with A since the entry of the interim no contact order and maintains that the "[t]he order was not a prohibition of [A] parking his car at the former marital residence, gardening there, nor even living there."

Because this claim requires us to examine the findings of the trial court, we reiterate that "[t]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *Netter* v. *Netter*, 220 Conn. App. 491, 501, 298 A.3d 653 (2023); see also *Casiraghi* v. *Casiraghi*, supra, 200 Conn. App. 787 ("[i]t is within the province of the trial court to find facts and draw proper inferences from the evidence presented" (internal quotation marks omitted)). "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court

is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Kirwan* v. *Kirwan*, 187 Conn. App. 375, 393–94, 202 A.3d 458 (2019).

We are not persuaded that the court's finding that the plaintiff permitted A to have contact with the child is clearly erroneous. It was based on unrebutted evidence that A had his mail forwarded to the marital home and that A's vehicle was parked together with the plaintiff's vehicle at the marital home while the plaintiff had parenting time with the child and the child would not have been at school. The court also received into evidence Facebook postings from A's account that included a photograph of the view from within the marital home and a post stating: "I don't live here! Hahahahahahahah-Hhahahahahaha." The trial court reasonably could have found that the plaintiff permitted A to have contact with the child on the basis of the unrebutted documentary evidence presented that A was living at the marital home with the plaintiff and the child.

Finally, we note that the plaintiff did not appear at the hearing to rebut the evidence offered by the defendant, prompting the court to draw "an adverse inference based on the plaintiff's failure to appear . . . to refute that [A] lives with her and the minor child." The plaintiff relies on the general proposition that an adverse inference cannot be used to supply proof of a fact. See *In re Samantha C.*, 268 Conn. 614, 638, 847 A.2d 883 (2004). Having already determined that the court's finding was supported by the evidence submitted at the hearing, we reject the plaintiff's contention that the adverse inference in the present case improperly was used to supply proof of a fact. Rather, the court appropriately drew an adverse inference from the plaintiff's failure to appear to rebut the defendant's evidence, which is permissible under our appellate authority. "[A] trier of fact generally may draw an adverse inference against

a party for its failure to rebut evidence. . . . After a prima facie case is established, an adverse inference may be drawn against a party for his or her failure to testify, unless the party was entitled to rely upon one of the few exceptional privileges that carry with it a protection from adverse inferences." (Citation omitted; internal quotation marks omitted.) *Norberg-Hurlburt* v. *Hurlburt*, 162 Conn. App. 661, 673, 133 A.3d 482 (2016); see id. (where court heard testimony of defendant that plaintiff and another individual were cohabitating and received into evidence exhibit showing they were engaged, court properly drew adverse inference with respect to issue of cohabitation because plaintiff failed to appear to testify at scheduled hearing). Accordingly, we conclude that the court did not abuse its discretion in finding the plaintiff in contempt.

IV

The plaintiff next claims that the court improperly ordered her to pay attorney's fees in connection with the defendant's motions for contempt related to violations of the interim no contact order and parenting time order. She argues, inter alia, that the court abused its discretion in awarding attorney's fees that were not restricted to efforts related to the contempt actions. We agree.

We first set forth the legal principles that guide our analysis. "General Statutes § 46b-87 grants the court the discretion to award attorney's fees to the prevailing party in a contempt proceeding. The award of attorney's fees in contempt proceedings is within the discretion of the court. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did. . . . Importantly, where contempt is established, the concomitant award of attorney's fees properly is awarded pursuant to § 46b-87 and is

restricted to efforts related to the contempt action." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 184, 138 A.3d 1069 (2016).

The following additional procedural history is relevant to this claim. The defendant filed four motions for contempt, two of which alleged violations of parenting time (contempt motions ## 123.00 and 125.00), one that alleged violation of the order requiring the plaintiff to participate in the parenting education program (contempt motion #126.00), and one that related to the interim no contact order (contempt motion #165.00). In each motion, the defendant requested that the court order the plaintiff to pay attorney's fees in connection with prosecution of that motion.

On May 22, 2023, the defendant filed an affidavit of fees relating to his contempt motions ##123.00, 125.00 and 126.00. Among other entries, it contained an entry with the description "preparation of motion for contempt (parenting education)." The affidavit included total fees in the amount of $1837.50. During closing argument on September 13, 2023, the defendant's counsel argued: "And I'm asking for a finding of contempt on motion #123.00, which was for the parenting time. And I've submitted an affidavit of fees, which was dated May 22nd . . . for fees on that particular motion. And then . . . there's also another motion regarding parenting time, which is 12[5].00, and that's covered in the affidavit of fees that was submitted . . . ."

On September 13, 2023, the defendant filed a supplemental affidavit of attorney's fees, which contained entries related to contempt motion #165.00 and the restraining order application against A. Specifically, among other entries, the affidavit contained entries with the description "preparation of restraining order re [A], call with client," "preparation for TRO hearing . . ."

and "court appearance (TRO)." Those three entries concerning the restraining order totaled $1900 out of the affidavit's total fees in the amount of $4180.

The defendant's counsel addressed the affidavit of fees during closing argument. Specifically, she stated: "I'm seeking legal fees on the contempt motion on an affidavit of fees . . . for today's contempt . . . and for which also includes the restraining order, the application that was filed by [the defendant]. And although it was filed and served at [A's] usual place of abode, he didn't appear, so I'm asking that he receive attorney's fees for that. So, the total for contempt and the attorney's fees for the subsequent restraining order is $6017.52." The plaintiff's counsel asked that the court order no fees on the basis that the contempt motions should be denied on the basis of a lack of evidence that the plaintiff wilfully disobeyed an order.

In its memorandum of decision, the court granted contempt motions ##123.00 and 125.00 and ordered the plaintiff to pay attorney's fees in the amount of $1837.50. The court denied contempt motion #126.00. The court granted contempt motion #165.00 and ordered the plaintiff to pay attorney's fees in the amount of $3675.

On appeal, the plaintiff claims that the court abused its discretion in its awards of attorney's fees because, inter alia, portions of those fees were for work unrelated to the motions for contempt. We first address the $1837.50 award, which award corresponded with the total amount shown in the related affidavit of fees. As noted previously, that affidavit included at least one entry that related to a separate motion for contempt, concerning the parenting education program, which was denied. An award of fees that encompasses fees related to a separate motion is not proper. See *Malpeso* v. *Malpeso*, supra, 165 Conn. App. 185 (court abused its discretion in awarding fees after finding defendant

in contempt where most of fees sought in affidavit related to "plaintiff's motion for modification," which was never filed (emphasis omitted; internal quotation marks omitted)); *Allen* v. *Allen*, 134 Conn. App. 486, 503, 39 A.3d 1190 (2012) (court exceeded its discretion in awarding fees for time spent by defendant's counsel negotiating with IRS because such efforts were unrelated to contempt action); see also *Wald* v. *Cortland-Wald*, 226 Conn. App. 752, 789, 319 A.3d 769 (2024) (court did not abuse its discretion in awarding only $1000 in attorney's fees where affidavit reflected fees in amount of $17,282.50, because affidavit included fees related to motion for contempt that were denied by court). The court's award of $3675 is improper for the very same reason. The affidavit filed by the defendant's counsel contained entries related to the restraining order proceedings filed by the defendant against A. Although the court did not award the full $4180 sought, it awarded only $505 less than the full amount. This is improper in light of entries related to the restraining order in the cumulative amount of $1900. Accordingly, we conclude that the court exceeded its discretion in awarding fees for counsel's time spent on other motions and proceedings. Thus, we vacate the awards of attorney's fees and remand this matter to the court for further proceedings in accordance with this opinion.[10]

V

The plaintiff's next two claims on appeal challenge the factual findings underlying the court's financial awards. Specifically, she claims that the child support

---

[10] Because we conclude that the court improperly awarded fees for time spent on other motions, we need not reach the plaintiff's additional argument that she was not afforded the opportunity to be heard on the fees claimed by the defendant. We note, however, that during closing argument, counsel was given the opportunity to respond to the request, and his response was limited to a conclusion that a contempt finding was not warranted and did not extend to the amount or nature of the fees requested.

award rested on clearly erroneous factual findings as to the parties' incomes and that the court's property distribution award rested on a clearly erroneous finding as to the equity in the marital home. Finally, she contends that these errors require a reversal of the financial orders in their entirety.

Before addressing the plaintiff's claims, we set forth the applicable standard of review. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Ferraro* v. *Ferraro*, 168 Conn. App. 723, 727, 147 A.3d 188 (2016).

A

The plaintiff claims that the court's finding of her presumptive child support obligation rested on clearly

erroneous factual findings as to the net income of the parties. We agree.

The following additional procedural history is relevant to the plaintiff's claim. Both parties submitted child support guidelines worksheets on April 12, 2023. In the defendant's guidelines worksheet, he identified the plaintiff's weekly gross income as $2905 and net income as $1990. The defendant identified his weekly gross income as $1225 and net income as $901. In the plaintiff's guidelines worksheet, she identified her weekly gross income as $2694 and net income as $1845. She identified the defendant's weekly gross income as $1225 and net income as $1019.

The plaintiff was questioned at trial on her financial affidavit filed April 12, 2023. She testified in accordance with her affidavit that she earned $2694 gross weekly.[11] The affidavit reflected a weekly net income of $1845. The defendant's financial affidavit reflected gross base pay of $864 and overtime of $361, for a total gross income of $1225 and net income of $938. At trial, he testified that he was currently employed, he earns a base salary, works about five hours of overtime per pay period, and that the overtime and base salary were reflected on his financial affidavit.

In August, 2023, the plaintiff filed an updated financial affidavit. Therein, she identified her total base pay from employment income as $2694, listed child support actually received in the amount of $96, for a total gross weekly income of $2790. She identified her net weekly income as $1941.

The court found that the plaintiff is employed as a pediatric nurse practitioner and has the ability to earn

---

[11] The plaintiff testified: "For the most part, [the weekly income is] consistent, but I take call that's on rotation as far as overnight call and then weekend and holiday call. So, sometimes with that there's, like, a difference of a couple hundred dollars per paycheck. . . . But I am paid on a base salary rate."

$2905 gross, $1941 net weekly. The court found that the defendant was employed as a forklift operator, with compensation of $22.50 per hour, plus approximately two hours of overtime each week. The court found that the defendant has the ability to earn $864 gross per week. The court referenced the defendant's guidelines worksheet dated April 12, 2023, in rendering its child support order. It found that the defendant's guidelines worksheet showed a presumptive support amount of $282 weekly to be paid from the plaintiff to the defendant. The court ordered the plaintiff to pay that amount weekly.

On appeal, the plaintiff claims that the defendant's guidelines worksheet "overstated the plaintiff's income by $145 per week, while understating the defendant's income by $118 per week, for a combined difference of $263 per week between the [incomes listed on the] defendant's . . . guidelines [worksheet] and the evidence presented to the court by way of financial affidavits." Thus, according to the plaintiff, the court's finding of the plaintiff's presumptive child support obligation rested on incorrect income figures unsupported by the evidence. Following our thorough review of the record, we conclude that the court's child support order is inconsistent with the facts found and that the court could not reasonably have concluded as it did.

We first set forth the legal principles governing child support orders and the application of the child support guidelines. General Statutes § 46b-215a provides for a commission to oversee the issuance of child support guidelines, which must be updated every four years, "to ensure the appropriateness of criteria for the establishment of child support awards . . . ." General Statutes § 46b-215a (a). General Statutes § 46b-215b (a) provides in relevant part: "The . . . guidelines issued pursuant to section 46b-215a . . . and in effect on the date of the support determination shall be considered

in all determinations of child support award amounts
. . . . In all such determinations, there shall be a rebut-
table presumption that the amount of such awards
which resulted from the application of such guidelines
is the amount to be ordered. A specific finding on the
record at a hearing, or in a written judgment, order or
memorandum of decision of the court, that the applica-
tion of the guidelines would be inequitable or inappro-
priate in a particular case, as determined under the
deviation criteria established by the Commission for
Child Support Guidelines under section 46b-215a, shall
be required in order to rebut the presumption in
such case."

"The child support guidelines set forth a worksheet
that provides specific instructions for calculating child
support." *Renstrup* v. *Renstrup*, 217 Conn. App. 252,
266, 287 A.3d 1095, cert. denied, 346 Conn. 915, 290
A.3d 374 (2023). The guidelines worksheet states that
"each parent's share of the basic child support obliga-
tion is determined by calculating each parent's share
of the combined net weekly income . . . and multi-
plying the result for each parent by the basic child
support obligation." Regs., Conn. State Agencies § 46b-
215a-2c (a) (4). The guidelines provide that the court
should: "(B) Determine each parent's percentage share
of the combined net weekly income by dividing the [net
weekly income] amount for each parent by the [total
combined net weekly income] and multiplying by one
hundred percent. . . . (C) Multiply [the amount as cal-
culated in (B), rounded to the nearest whole percent-
age] for each parent by the [basic child support obliga-
tion (from the Schedule of Basic Child Support
Obligations)]. . . . These amounts are each parent's
share of the basic child support obligation." Id., § 46b-
215a-2c (a) (4).

"Although the child support guidelines create a legal
presumption as to the amount of child support pay-
ments . . . the figures going into that calculation on

the worksheet must be based on some underlying evidence. . . . A court may not rely on a worksheet unless it is based on some underlying evidence." (Citation omitted; internal quotation marks omitted.) *Ferraro* v. *Ferraro*, supra, 168 Conn. App. 730.

In the present case, the court identified a presumptive support amount of $282, which was reflected in the defendant's guidelines worksheet. However, the court's findings as to each party's income conflicted with the income reflected on the defendant's guidelines worksheet, which formed the basis for the court's determination of the presumptive amount. Having found the parties' incomes to be different from those reflected on the defendant's guidelines worksheet, the court should not have used the presumptive amount shown on the defendant's guidelines worksheet. See *Barbour* v. *Barbour*, 156 Conn. App. 383, 390–91, 113 A.3d 77 (2015) (where only document supporting increase from $50 to $163 in defendant's support amount was guidelines worksheet prepared by plaintiff's counsel, court's modification lacked factual foundation and could not stand); see also *Ferraro* v. *Ferraro*, supra, 168 Conn. App. 731 (where court prepared guidelines worksheet, and figures used by court did not match figures as provided in financial affidavit, testified to at trial, or contained in exhibits submitted to court, determination of parties' net income lacked evidentiary basis). Accordingly, we conclude that the court improperly calculated the presumptive support amount.

Additionally, our review of the record reveals that the court could not reasonably have concluded as it did with respect to its factual findings as to the income of each party.[12] The court determined that the plaintiff

---

[12] We note that the court stated each party's income in terms of the party's "ability to earn" that amount. We do not view the court's finding as an assignment of earning capacity, which is one of the deviation criteria within the guidelines but, rather, an imprecisely stated finding of each party's actual earned income.

had a weekly income of $2905 gross and $1941 net. Although the plaintiff's August, 2023 financial affidavit reflects a net income of $1941, which is consistent with the court's finding of her net income, that $1941 amount was calculated based on a gross income that included a $94 weekly child support payment that she was then receiving from the defendant. Our regulations define "gross income" as "the average weekly earned and unearned income from all sources before deductions, including but not limited to the items listed in subparagraph (A) of this subdivision, but excluding the items listed in subparagraph (B) of this subdivision." Regs., Conn. State Agencies § 46b-215a-1 (11). The definitions portion of the guidelines expressly identifies, as a gross income exclusion, "support received on behalf of a child who is living in the home of the parent whose income is being determined." Id., § 46b-215a-1 (11) (B) (i). It is error to consider the defendant's pendente lite child support paid to the plaintiff as income for purposes of determining the parties' child support obligation.

With respect to the defendant's income, the court determined that he had a gross weekly income of $864. The court made no finding of the defendant's net weekly income. "[I]t is well settled that a court must base its child support and alimony orders on *the available net income of the parties, not gross income.* . . . Whether an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific. . . . [W]e differentiate between an order that is a function of gross income and one that is based on gross income. . . . [T]he term 'based' as used in this context connotes an order that only takes into consideration the parties' gross income and not the parties' net income. Consequently, an order that takes

cognizance of the parties' disposable incomes may be proper even if it is expressed as a function of the parties' gross earnings." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Procaccini* v. *Procaccini*, 157 Conn. App. 804, 808, 118 A.3d 112 (2015). Moreover, the court could not have used the net income from the defendant's guidelines worksheet, as the net income identified therein was $901, which is greater than the defendant's gross income as found by the court.

Because the court made clearly erroneous factual findings as to the income of the parties and improperly calculated the presumptive support amount, the court's child support award amounted to an abuse of its discretion.

B

The plaintiff's next claim on appeal is that the court's finding of equity in the marital home in the amount of $266,986 was clearly erroneous. We agree.

The following procedural history is relevant to this claim. At trial, the plaintiff was questioned with respect to her financial affidavit filed April 12, 2023. Therein, she had identified weekly mortgage expenses of $450 for a first mortgage on the marital home and $20 for a second mortgage on the home. The plaintiff also introduced into evidence an exhibit summarizing her expenses, which reflected monthly payments of $1950 and $80.17 toward the first and second mortgages, respectively. The plaintiff testified that the monthly payment on the first mortgage included interest, taxes, and insurance.

In her April, 2023 financial affidavit, the plaintiff estimated the fair market value of the marital home to be $360,000, identified a current mortgage balance of $199,456, and listed equity of $160,544. She did not

include any amount under "equity line of credit and other liens." In the defendant's financial affidavit dated April 13, 2023, he estimated the fair market value of the marital home to be $440,000, identified a current mortgage balance of $198,000, listed "equity line of credit and other liens" in the amount of $13,400, and listed equity in the amount of $228,600. On August 23, 2023, the plaintiff filed with the court another financial affidavit, in which she identified a current mortgage balance of $210,068. She also identified weekly expenses of $565 and $19 toward payment of the first and second mortgages, respectively.

In its memorandum of decision, the court found "that the fair market value of the house as of April 12, 2023, is $450,000 with a principal balance of $199,456 on the mortgage. The plaintiff continued to pay the mortgage since April 12, reducing the balance to $183,014, leaving equity in the marital property in the amount of $266,986 as of the date of this decision." The court awarded the plaintiff the marital home and ordered her to pay the defendant $133,500 within six months.

On appeal, the plaintiff argues that the court's finding as to the equity in the marital home was clearly erroneous. She maintains that the court's finding of a mortgage balance reduction of $16,442, from April through November, 2023, was not supported by the evidence. Specifically, she argues that the court failed to take into account the second mortgage on the home and improperly calculated the amount of the mortgage balance reduction because her monthly payments included interest, taxes, and insurance.

Following our thorough review of the record, we conclude that the court's finding that the plaintiff had reduced the balance on her mortgage to $183,014 is clearly erroneous because the record is wholly devoid of evidence to support it. First, we note that, although

the court found a principal balance of $199,456 as of April 12, 2023, that number failed to account for the second mortgage, as was reflected in the plaintiff's testimony, her expenses listed in her financial affidavit, and the defendant's financial affidavit. Moreover, the trial court's determination that the balance of the mortgage had been reduced by $16,442 between April and November likewise is not supported by the evidence. Given that the mortgage payment, as testified to by the plaintiff, includes interest, taxes, and insurance, the court had no evidence before it to calculate the reduction in the mortgage balance on the basis of those payments.

"[W]here . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's [fact-finding] process, a new hearing is required." (Internal quotation marks omitted.) *C. D.* v. *C. D.*, 218 Conn. App. 818, 828 n.6, 293 A.3d 86 (2023). Having found equity in the marital home in the amount of $266,986 and awarding the home to the plaintiff, the court issued a property distribution order requiring the plaintiff to pay the defendant $133,500, or one half the amount of equity in the home. Because the court's property distribution order rested on its clearly erroneous finding of the amount of the equity in the home, we are compelled to conclude that the error was harmful.

C

We now turn to the appropriate relief. "Individual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a

seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards. . . .

"Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question. . . .

"Determining whether an order is severable from the other financial orders in a dissolution case is a highly fact bound inquiry." (Citation omitted; internal quotation marks omitted.) *Renstrup* v. *Renstrup*, supra, 217 Conn. App. 284.

In the present case, we have determined that the court made clearly erroneous factual findings underlying its child support and marital property division orders. We conclude that the court's errors with respect to those orders are not severable from the court's alimony order, which required the plaintiff to pay alimony in the amount of $260 weekly for a five year term, which was made nonmodifiable as to the term. This is particularly so given that the court made clearly erroneous factual findings as to the parties' incomes and the major asset in the marital estate. See *Onyilogwu* v. *Onyilogwu*, 217 Conn. App. 647, 657–58, 289 A.3d 1214 (2023) ("[b]ecause the court's support orders, particularly its spousal support or alimony order, are informed by and reflective of the parties' incomes and assets, as affected by the court's other financial orders, the

entirety of the mosaic must be refashioned whenever there is error in the entering of any such interdependent order" (internal quotation marks omitted)). Because it is uncertain whether the alimony award will remain intact after reconsidering the child support order and property distribution orders in a manner consistent with this opinion, we conclude that the entirety of the mosaic must be refashioned. Accordingly, on remand, the court must reconsider all of the financial orders, including the alimony award.

The judgment is reversed as to the financial orders and the awards of attorney's fees, and the case is remanded for further proceedings on those issues; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.